ALLEN VANE *et al.*

*v.*

THE CITY OF EVANSTON.

*Filed at Ottawa June 19, 1894.*

1. SPECIAL ASSESSMENTS—*sufficiency of description of proposed improvement.* A substantial compliance with the statute, which requires the ordinance for a local improvement to specify "the nature, character, locality and description of the improvement," will be sufficient.

2. An objection to an ordinance for the paving of a street, that it fails to provide for man-holes and catch-basins to convey from the pavement the surface water, dirt, etc., where a sewer has already been constructed in the street sufficient for the purpose, will not avail to defeat the assessment.

3. SAME—*discretion as to extent of local improvement.* The municipal authorities of cities and villages are made, by the statute, the judges of the utility of an improvement upon streets, and whether such improvement shall be treated as a local improvement in raising funds to pay for it, and their decision on these questions is final. Where the ordinance provides for an improvement complete in itself, it will not follow that the ordinance is to be deemed void because the utility of the improvement might be enhanced by the addition of something more which has been omitted.

4. SAME—*personal view by jury.* In a proceeding to confirm a special assessment by a city or village for a local improvement, the court has the power, in the exercise of a reasonable discretion, to permit, in proper cases, a view of the property assessed, or the *locus in quo,* by the jury, on the issue of benefits to the property specially assessed.

5. PRACTICE—*view by jury—when allowed.* At common law a personal view of premises was not granted as a matter of right, but the power rested in the sound discretion of the court, to be exercised whenever, in the nature of the case, it became necessary or important to a clearer understanding of the issues, and to enable the jury to properly apply the evidence.

6. The design of the practice of allowing a view by the jury was to enable them better to understand the matter in controversy between the parties; and it was not confined to real actions, but was allowed in several personal actions for an injury to real estate, as, trespass *quare clausum fregit,* trespass on the case, and nuisance.

7. At common law, as the same was adopted in this State, the view was allowed, or not, as the judge or court determined, in his or its dis-

cretion, that the view was proper or necessary to enable the jury better to understand and apply the evidence introduced on the trial. The effect of the view may be controlled by an instruction to the jury.

8. SAME—*improper remarks of counsel—waiver of objections.* If improper remarks are made by counsel in the presence of the jury, the attention of the court should be called to them in apt time, so as to enable the court to take proper action. If the court, upon objection being made, fails or refuses to make the proper order, the question should be saved and presented for review, otherwise the party will be deemed to have waived his objection.

9. SAME—*tampering with jury—ground of new trial.* Tampering with the jury by the successful party litigant, or doing any act out of the presence of the court which would have a tendency to bias or prejudice them in the consideration of the cause, will ordinarily afford sufficient ground for granting a new trial.

10. The parties, during the separation of the jury, are not permitted to show them unusual civilities and attentions, and such attentions practiced by the successful party, his counsel or partisans, and which excite suspicion as to the motives of the party or the effect upon the jury, will ordinarily afford sufficient ground for the granting of a new trial. And furnishing the jurors with refreshments, and the like, the extension to and acceptance by them of gratuities, or, indeed, any other approach to the jury casting suspicion that they have been tampered with or that their verdict has been improperly influenced, not satisfactorily explained, will ordinarily avoid the verdict, whether there was any actual intent or design to influence them or not.

11. It does not, however, follow, that customary offers of civilities, or ordinary hospitality or courtesy extended by the successful litigant, when not designed or calculated to influence the juror or jurors in their consideration of the case, and which are devoid of suspicion, will afford sufficient ground for setting the verdict aside.

12. In a proceeding to confirm a special assessment by a city, while the jury were out of court, viewing the property assessed, they were furnished a free lunch by the attorney for the city. It appeared that the lunch was given on the suggestion of the court, before the jury went out. It was not shown that the jury, or any of them, knew, before they were finally discharged, that the lunch had been provided at the expense of the city : *Held,* that the case was not such as to vitiate a verdict in favor of the city.

APPEAL from the County Court of Cook county; the Hon. GEORGE W. BROWN, Judge, presiding.

Messrs. WILSON & ZOOK, for the appellants:

The ordinance does not specify the nature, character, locality and description of the improvement, as provided in section 19 of Hurd's Statutes. It does not specify catch-basins and man-holes, so that a proper estimate could with certainty be made of the cost thereof. One person might make an estimate for catch-basins and man-holes, another might not.

In the latter part of section 4, wooden curbing is to be held in place by white oak stakes, set not more than three feet apart. This makes it indefinite how many stakes are to be used. *Foss* v. *Chicago,* 56 Ill. 354; *Jenks* v. *Chicago,* id. 397; *Steele* v. *River Forest,* 141 id. 302.

All ordinances must be reasonable, and this one is not. *Hyde Park* v. *Carton,* 132 Ill. 100.

The court erred in sending the jury out to view the premises. *Doud* v. *Guthrie,* 13 Bradw. 653.

We know that the Supreme Court, in the case of *Springer* v. *City of Chicago,* 135 Ill. 552, has seemingly taken strong ground in the power of the court to send the jury out to view the premises; but we believe the court is in error.

The court erred in overruling objectors' motion for a new trial. The first point we call the court's attention to, is the improper influence brought to bear upon the jury through the improper remarks of Mr. Grover, in open court, in the hearing of the jury, in reference to the jury's viewing the premises, following that up by furnishing the conveyance to Evanston, then to the premises, then to lunch. This was all free to the jury, at the procurement of the city of Evanston. This was an unfair trial—a travesty upon justice. *Doud* v. *Guthrie,* 13 Bradw. 653; *Lyons* v. *Lawrence,* 12 id. 533; *Knight* v. *Freeport,* 13 Mass. 318; 2 Thompson on Trials, sec. 2560.

An attempt to influence a jury by other means than evidence and argument, on grounds of public policy, is always ground for new trial, without reference to the merits of the

case, and whether successful or not.　2 Thompson on Trials, secs. 2564, 2565 ; *Ensign* v. *Harney,* 15 Neb. 330 ; *Pelham* v. *Page,* 6 Ark. 535 ; *Studley* v. *Hall,* 22 Me. 198 ; *Mining Co.* v. *Showers,* 6 Nev. 291 ; *Springer* v. *State,* 34 Ga. 379 ; *Drake* v. *Newton,* 23 N. J. L. 111.

The law is so sensitive upon this subject, that affidavits, not explained away, casting suspicion of such misconduct on the prevailing party, will avoid the verdict.　*Huston* v. *Vail,* 51 Ind. 299 ; 2 Thompson on Trials, sec. 2560.

Mr. Frank R. Grover, for the appellee :

The ordinance is not defective in any respect.　All the details of the work need not be set forth in the ordinance.　A substantial compliance with the statute is all that is necessary.　*Kankakee* v. *Potter,* 119 Ill. 324 ; *Pearce* v. *Hyde Park,* 126 id. 287 ; *Adams County* v. *Quincy,* 130 id. 566 ; *Woods* v. *Chicago,* 135 id. 582.

As to the view of the premises by the jury, see *Springer* v. *Chicago,* 135 Ill. 552 ; *Doud* v. *Guthrie,* 13 Bradw. 653.

The question whether the remarks of counsel were improper can not be saved except by seasonable objection, which, if overruled, should be followed by an exception, which exception should be noted and incorporated in the general bill of exceptions.　1 Thompson on Trials, sec. 962 ; *Turner* v. *State,* 68 Tenn. 206 ; *Roeder* v. *Studt,* 12 Mo. App. 566 ; *Rudolph* v. *Landeverlin,* 92 Ind. 34.

The remarks of counsel, to afford ground for a new trial, must have been objected to when made.　16 Am. and Eng. Ency. of Law, 527 ; *Skaggs* v. *Given,* 29 Mo. App. 612 ; *Huekill* v. *McCoy,* 38 Kan. 53 ; *Ross* v. *Davenport,* 66 Iowa, 548 ; *Powers* v. *Mitchell,* 77 Me. 361 ; *Railroad Co.* v. *Myrtle,* 51 Ind. 566 ; *Insurance Co.* v. *Edwards,* 74 Ga. 220 ; *Turner* v. *State,* 70 id. 765 ; *Morrison* v. *State,* 76 Ind. 335.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

This is an appeal by Allen Vane and others,' objectors, from a judgment of the county court of Cook county, confirming a special assessment made for the purpose of paving Forest avenue, in the city of Evanston, from the south line of Davis street to the north line of Greenleaf street.

It is first insisted that the ordinance providing for the improvement, and under which the assessment was made, does not sufficiently specify "the nature, character, locality and description of the improvement." The particular objection is, that it nowhere provides, for man-holes and catch-basins to convey from the pavement, surface water, dirt, etc. Section 1 of the ordinance provides that Forest avenue shall be paved, between the points named, with pure Trinidad asphaltum, and thus improved for a width of thirty-three feet, —sixteen and one-half feet on each side of the center line of said avenue, etc., according to specifications therein set out. Section 2 contains the specifications providing for roadway, grading, excavations, curbs and gutters, foundation, materials, etc., and setting out in detail the material to be used, and the mode of construction.

It has been held by this court, in numerous cases, that a description in substantial compliance with the statute is sufficient. (See *Gage* v. *City of Chicago,* 143 Ill. 157, and cases there cited.) There could, it would seem, be no mistake as to the "nature, character, locality and description" of this improvement, and we think the omission from the ordinance of provision for man-holes and catch-basins, in view of the fact, as will be seen hereafter, that a sewer and catch-basins already existed along Forest avenue, does not affect its validity. In the matter of making public improvements, the municipal authorities must be, and are, invested, under our statute, (Starr & Curtis, clause 7, sec. 63, art. 5, chap. 24,) with discretionary power. As said in *Louisville and Nashville Rail-*

*road Co.* v. *East St. Louis,* 134 Ill. 656: "Acting within the scope of the power conferred, * * * the city council in cities and board of trustees in villages are the judges of the utility of an improvement upon streets, and whether such improvement shall be treated as a local improvement in raising funds to pay for it. Their decision on these questions is final." (See *Fagan* v. *Chicago,* 84 Ill. 227; *Illinois Central Railroad Co.* v. *Chicago,* 141 id. 586; Dillon on Mun. Corp. sec. 58.) Under the facts here shown, it rested wholly within the discretion of the city council to provide other or additional escapements for water, as they deemed for the public interest. The improvement provided for was complete within itself, and it does not follow that the ordinance is to be deemed void because the utility of the improvement might be enhanced by the addition of something more, which the council, in their discretion, have seen proper to omit.

The jury, under the direction of the court, against the objection of appellants, were permitted to view the premises, and this ruling is assigned for error. The statute (Starr & Curtis, sec. 147, chap. 24,) provides that in cases of this character "the hearing shall be conducted as in other cases at law." In the case of *Springer* v. *Chicago,* 135 Ill. 552, which was an action brought by Springer to recover damages occasioned to his property by the building of a viaduct and approaches in one of the streets of Chicago, upon review of the authorities in this country and England, it was held that at common law a view by the jury, in proper cases, is sanctioned; and in that case an order permitting a view of the *locus in quo* by the jury was expressly approved. It was also there said: "If at common law, independent of any English statute, the court had the power to order a view by jury, (as we think it plain the court had such power,) as we have adopted the common law in this State, our courts have the same power."

As these cases are required by statute to be conducted as other cases at law, there can, under the authority of the

*Springer case,* it·would seem, be no question of the power of
the court, in the exercise of a reasonable discretion, to per-
mit, in proper cases, a view of the *locus in quo* by the jury.
As we understand the authorities, at common law the view
was not granted as a matter of right, but the power rested in
the sound discretion of the court, to be exercised whenever,.
from the nature of the case, it became necessary or import-
ant to a clearer understanding of the issues, and to enable
the jury to properly apply the evidence. This is illustrated
in the note to 1 Burr. 253. The practice in regard to view
by jury, as settled in the King's Bench, is thus stated : "Be-
fore the 4th and 5th Anne, c. 16, sec. 8, there could be no
view until after the cause had been brought on for trial. If
the court saw the question involved in obscurity, which might
be cleared up by view, the cause was put off, that the jurors
might have a view before it came on to be tried again. The
rule for a view proceeded upon the previous opinion of the
court or judge, at the trial, 'that the nature of the question
made a view not only proper, but necessary,' for the judges at
the assizes were not to give way to the delay and expense of
the view, unless they saw that the cause could not be under-
stood without one. However, it often happened, in fact, that
upon the desire of either party, causes were put off for want
of a view, upon specious allegations, from the nature of the·
question 'that a view was proper,' without going into the proof
so as to be able to judge whether the evidence might not be·
understood without it. This circuity occasioned delay and
expense, to prevent which, the 4th and 5th Anne, c. 16, sec. 8,.
which empowered the court at Westminster to grant a view,"
etc., was enacted. The practice under the statute of Anne is
then stated, but as its passage was subsequent to the fourth
year of James I., it was not adopted in this State, and consid-
eration of it is unimportant.

In Stearns on Real Actions, 102, in speaking of the practice ·
of allowing view by jury, it is said : "The design of this pro- ·

ceeding was to enable the jury better to understand the matter in controversy between the parties. It was not confined to real actions, but was allowed in several personal actions for an injury to the realty, as, trespass *quare clausum fregit,* trespass on the case, and nuisance."

In 2 Tidd's Practice, 795, after stating that in actions of waste, etc., where it appears to the court, in vacation, to be proper and necessary that the jurors who are to try the issue should, for the better understanding of the evidence, have a view of the lands, etc., the court or judge will grant a rule for such view pursuant to the statute 4th Anne and 6th George IV, chap. 50, sec. 23, it is said: "Before the making of the above statutes there could have been no view till after the cause had been brought on to trial, when, if the court saw the question involved in any obscurity, which might be cleared up by a view, the cause was put off, that the jurors might have view before it came on again."

These authorities are cited and relied upon in the *Springer case,* together with many others illustrating the rule. We do not deem it necessary to enter into a more extended review at this time. It is, however, apparent, that at common law, as the same was adopted in this State, the view was allowed or not, as the judge or court determined, in his or its discretion, that the view was proper or necessary to enable the jury better to understand and apply the evidence introduced at the trial, —and this we understand to be the holding in the *Springer case.* There, after showing that a correct plat of the premises, or a photograph thereof, would be competent evidence to go to the jury, there is propounded the inquiry, why, if the same is competent, the jury should not be permitted to look at the property itself of which the photograph or plat is a picture, and it is said: "If the appellant desired to control the effect the view might have on the jury, in connection with the other evidence introduced, that might have been done by an appropriate instruction." And further: "It is apparent that the

jury could obtain a much better understanding of the issues presented by the pleadings, by a view of the premises, and in the exercise of a sound legal discretion we think the court did not err in allowing the view."

It seems clear, therefore, from the authorities, that the only purpose of permitting the jury to inspect and view the *locus in quo* is to better enable them to understand the matter in controversy between the parties, and to clear up any obscurity that may exist in the application of the evidence introduced in the cause. The Eminent Domain act declares that the jury shall, in condemnation cases, at the request of either party, go upon the land, (Rev. Stat. chap. 47, sec. 9,) and we have repeatedly held that the information derived by the jury from their personal view and inspection of the premises is to be considered by them, in connection with the other evidence in the case. Such was not the rule at common law, the purpose of the view being, as stated, simply to enable the jury to understand the issue, and apply the evidence. They were not authorized to consider any fact bearing upon the merits of the controversy derived from such view. To allow that to be done would be wholly inconsistent with the principles controlling in common law trials, and introduce great uncertainty in the trial of all common law causes where a personal view was permitted. Parties never would know upon what the jury based their finding, and the court would be in no position to control the evidence upon which it is predicated, or determine whether the verdict was based upon competent or upon the consideration of incompetent and illegal matters not admissible under the issues. We are not, however, prepared to hold that there was, in this case, any abuse of the discretion lodged in the court. Appellants might, if they had desired, limited the effect of the view, as said in the *Springer case,* to its only legitimate purpose. Having failed to ask such an instruction, they are in no condition to complain.

It is objected that counsel made improper remarks in the presence and hearing of the jury. It is sufficient to say, that such remarks were not objected to and an exception taken at the time they were made. The rule is, that the attention of the trial court should be called to irregularities of this kind by objection in apt time, thus enabling the court, by proper order, to counteract any prejudicial effect therefrom upon the jury, and if the court, upon objection being made, fails or refuses to make the proper order, the question can be saved and presented on review, otherwise the party will be deemed to have waived his objection. 1 Thompson on Trials, sec. 692; *Earll* v. *People,* 99 Ill. 123; *Sanitary District* v. *Cullerton,* 147 id. 385.

It is objected that the jury, while out of the presence of the court, on their view of the premises, were furnished lunch at a hotel in Evanston, at the expense of the city, the prevailing party to the suit, and that fact having been shown upon the motion for new trial, the court erred in not awarding the same. Tampering with juries by the successful party litigant, or doing any act out of the presence of the court which would have a tendency to bias or prejudice them in the consideration of the cause, will ordinarily afford sufficient ground for granting a new trial. No right is more valuable to the citizen, or more important in the due and orderly administration of justice, than that jurors should be kept absolutely free from anything that might improperly influence their deliberations. The rigidity of the common law, by which the jurors were kept together, practically as prisoners of the court, until they had agreed upon a verdict, (3 Coke's Litt. 227 b,) has, under the advanced conditions of society, been practically disregarded by the courts. It is now the customary practice for the court, in the exercise of its sound discretion, and under cautionary directions as to their duty, to allow the jury to separate, pending the trial, (Thompson & Mer. on Juries, sec. 10, *et seq.,*) and to allow them suitable food, etc., upon its

40—150 ILL.

proper order. The parties are not, however, permitted to show to the jury, during their separation, unusual civilities and attentions. Such attentions practiced by the successful party, his counsel or partisans, and which excite suspicion as to the motive of the party or effect upon the jury, will ordinarily afford sufficient ground for the granting of a new trial. Furnishing the jury or jurors with refreshments, and the like, by the successful party, the extension to and acceptance by them of gratuities, or, indeed, any other approach to the jury casting suspicion that they are tampered with or that their verdict has been improperly influenced, not satisfactorily explained away, will ordinarily avoid the verdict, whether there was any actual intent or design to influence them or not. *Huston* v. *Vail*, 51 Ind. 299; *Martin* v. *Morelock*, 32 Ill. 485; 2 Thompson on Trials, 2560-2565, and cases in note; 16 Am. and Eng. Ency. of Law, 529, and cases in note.

This doctrine is based upon the ground that public policy requires, and the pure and orderly administration of justice demands, that the jury, to whom the law commits the rights, liberties and lives of men, should be kept absolutely free from suspicion. The law will not tolerate the slightest suspicion that the successful litigant has corrupted or improperly influenced the jury, or that the jurors have been, directly or indirectly, tampered with, lest justice be subverted and its administration be brought into contempt. It does not, however, follow, that customary offices of civility, and ordinary hospitality or courtesy, extended by the successful litigant, when not designed or calculated to influence the juror or jurors in their consideration of the case, and which are devoid of suspicion, will afford sufficient ground for setting the verdict aside and awarding a new trial. *Tripp* v. *Connurs*, 2 Allen, 556; *Carlisle* v. *Sheldon*, 38 Vt. 440; *Eakin* v. *Canal Co.* 4 Zab. (N. J. L.) 538; *Johnson* v. *Green*, 17 Neb. 447; 2 Thompson on Trials, 2565.

There was in this case no purposed tampering with the jury. The jurors were sent a distance of twelve miles, between the hours of ten and eleven o'clock A. M., to view the premises. The evidence to support the motion is the affidavit of one of the jurors, in which it is stated that the "luncheon was without cost or charge to affiant or said jury, but was, as affiant understood it, at the request of said Grover" (attorney of appellee) "to said city of Evanston." Whether he learned of the fact, or "understood" that the attorney of appellee furnished the lunch, before or after the rendition of the verdict, does not appear. The counter-affidavits filed satisfactorily explain the alleged misconduct. The affidavit of the attorney, which is not controverted, states: "Evanston is twelve miles away, and it was necessary and convenient for jury to go on said road, and premises are about three-quarters of a mile from depot, and necessary for jury, in viewing premises, to ride in omnibus. The jury were sent by the court between ten and eleven o'clock A. M., and immediately after order was entered by court to make view, court called affiant to the bench, and stated to affiant that it would be impossible for jury to return to Chicago and the court house before dinner, and some arrangements should be made where they and bailiff could secure dinner in Evanston. Affiant, acting under instructions of the court, (attorney for objectors having left the court room,) telephoned to Quinlan, at Evanston, one of the managers of Avenue House in Evanston, to provide lunch for jury and bailiff at the expense of said city of Evanston, in case jury and bailiff shall call for the same. Affiant expressly instructed Quinlan that no information should be conveyed to jury as to who had provided for the lunch aforesaid, or who had become liable therefor, or who had agreed to pay for the same. Since trial of the cause affiant has made diligent inquiry of said Quinlan and others, and he is informed and believes, and so states fact to be, that none of said jury knew or were in any manner in-

formed, prior to bringing in their verdict, as to who had made provisions for such lunch." It appears that the arrangement mas made at the suggestion of the court, and while it can not be said that the proper mode was adopted, it undoubtedly absolves counsel for appellee from any intentional wrong-doing. It is not shown affirmatively that the jury, or any of them, knew before they were finally. discharged that lunch had been provided at the expense of one of the parties, and we can not say, in view of the facts submitted, that the court erred in holding that sufficient cause was not shown to justify setting aside the verdict.

It is also insisted that the verdict is not sustained by the evidence. The objectors introduced evidence tending to show that there were insufficient out-lets provided for the escape of surface water, and that it would accumulate and render the improvement valueless to adjacent property, etc. The city introduced evidence tending to show that a sewer already existed along Forest avenue, and which had ten catch-basins, and was sufficient for this purpose. It was shown that at all street intersections, four in number, and at Lincoln Place, there were catch-basins. There is nothing in this record tending to show that the commissioners appointed to make an estimate of the total cost of the improvement, took into consideration other or additional catch-basins. There can be no presumption, in the absence of proof, that they based their estimate upon anything other than the specifications contained in the ordinance.

There was, as usual, conflict in. the evidence as to benefits to property affected. There is in this record ample evidence to sustain the finding of the jury. They saw the witnesses, and had means and opportunity of judging of their credibility and the weight to be given to their evidence, which we do not possess. We are not prepared to say that the court erred in approving the verdict.

We have carefully examined the instructions, and find, taking them as a whole, that they stated the law with substantial accuracy, as applied to the facts of the case. Slight objections to the instructions given in behalf of the city undoubtedly exist, but these are fully obviated and corrected by those asked and given at the instance of the objectors. There is in this case no such conflict in the instructions as that the jury must choose between them, and no good purpose could be served by a consideration *in extenso* of the objections made. Appellants have, in our opinion, no reason to complain of the law as given to the jury.

Other minor objections are raised, which we have given careful consideration, but do not deem them of sufficient importance to warrant discussion.

We find no such prejudicial error in this record as will justify reversal of the judgment of the county court, and it will accordingly be affirmed.

*Judgment affirmed.*