HUGH MCFARLANE *et al.*

*v.*

THE CITY OF CHICAGO.

*Opinion filed April 17, 1900.*

1. VIADUCTS—*a roadway is part of the approach to a viaduct.* The approaches to a viaduct include the retaining walls, filling and surface of the roadway, together with such improvements of the roadway as are necessary to make it suitable for the use for which it was intended.

2. SPECIAL ASSESSMENTS—*when abutting owners cannot be assessed for paving approaches to viaduct.* Under an ordinance requiring a railroad company, as a condition to granting permission to lay tracks, to pay the cost of constructing a viaduct "with all proper lateral and other approaches necessary thereto," and to keep the same in repair, the railroad company, and not the abutting owners, must bear the expense of paving the roadway of such approaches.

3. SAME—*whether ordinance is reasonable or not is a question for the court.* The reasonableness or unreasonableness of an improvement ordinance is a question to be determined by the court with regard to all the existing circumstances or contemporaneous conditions, the object sought to be attained and the necessity or want of necessity for its adoption.

4. SAME—*when an ordinance for brick pavement is unreasonable.* An ordinance for brick pavement is unreasonable as to a portion of the street at the end of the improvement which has a cedar-block pavement only four years old and in good condition, where it is not shown that the brick pavement is necessary in the particular locality, and other portions of the block pavement have been excepted from the improvement by the ordinance without explanation.

APPEAL from the County Court of Cook county; the Hon. O. H. GILMORE, Judge, presiding.

This is an appeal from a judgment of confirmation of a special assessment entered by the county court of Cook county, in favor of the city of Chicago and against lots 1, 2, 3, 4, 5, 10 and 11 and the east half of lot 12, in the subdivision of block 55, except the south-east quarter, in school section addition to Chicago, the property of Hugh McFarlane; and lot 4, (except street,) and that part

of lot 3 lying west of Canal street, in block 35, in canal trustees' subdivision of the west half and so much of the south-east quarter as lies west of the south branch of the Chicago river, in section 21, township 39, north, range 14, the property of William O. Tegtmeyer, for the curbing, grading and paving with vitrified brick, and plastering curb walls, of certain parts of South Canal street, from the south line of the street railway right of way of West Harrison street south to a line parallel with and one hundred and eighty feet south-easterly of the south-easterly line of Lumber street, in the city of Chicago. The ordinance for the improvement was passed by the city council of the city of Chicago on the 22d day of May, 1899. The petition was filed for the special assessment in the county court of Cook county on the 17th day of June, 1899, and a hearing had by the court on the 26th and 27th days of September, 1899.

The ordinance for the said improvement, between the points above referred to, excepted certain portions of the street, viz.: The east half of the roadway of South Canal street from the south line of the street railway right of way on West Harrison street to the north curb line of Polk street, and the east half of the roadway of South Canal street from the north line of West Twelfth place to the south line of West Thirteenth street, and the roadway of South Canal street from a line parallel with and sixty feet south of the south line of West Fifteenth street to the north line of West Sixteenth street.

The property of appellant Hugh McFarlane is located at the south-west corner of Harrison and Canal streets, part of it, viz., lots 1, 2, 3, 4 and 5, fronting east on Canal street on the line of the proposed improvement, and was assessed $729.75. Running east on Harrison street across Canal street is a viaduct, which crosses the tracks of the Chicago, Burlington and Quincy railroad and connects with the bridge over the river to the down-town portion of the city of Chicago. There is an approach to this via-

duct on Canal street to Harrison street, immediately in front of McFarlane's property. This approach forms a part of the street, and in front of his property the grade of the street is twelve feet above the surface of the surrounding ground. This approach on Canal street extends south gradually from the viaduct at West Harrison street for a distance of three hundred feet, when the natural surface of the street is again reached. The pavement proposed by the ordinance, when it comes to this point on Canal street, is to be laid on the approach to the Harrison street viaduct. Where Canal street intersects Polk street there is another viaduct extending easterly on Polk street, across the tracks of the Chicago, Burlington and Quincy railroad, easterly to a bridge over the Chicago river, which also connects with the down-town district. To this viaduct there is also an approach on Canal street, both north and south of Polk street, running up to Polk street to meet the grade of the viaduct, which is of a similar nature to the approach above referred to, at Harrison street. These approaches, both north and south of Polk street, are each about three hundred feet long, and at the grade of the viaduct have an elevation of about twelve feet, then slope gradually to the north and south on Canal street this distance of about three hundred feet, where the ground grade of the street is again reached. The proposed improvement provides for the paving of these approaches on Canal street, as well as the approach on the corner of Harrison and Canal streets. These approaches are filled in with dirt, and are held in place by retaining walls built on each side of the roadway, made of large blocks of rubble limestone, which hold the entire weight of the fill between them, upon which fill the present roadway now exists. This roadway is to be graded and then paved with brick. Both of these viaducts and their approaches were built in the year 1881. The viaduct and approaches over Polk street were built under an ordinance granted by the city of Chicago to the Chi-

cago, Burlington and Quincy Railroad Company, which
was passed by the city council on the 20th of December,
1880, which authorized the railway company to construct
the viaduct and approaches under certain conditions, and
provided in section 3 as follows:

"Sec. 3. The permission and authority hereby granted
are upon the express conditions that the said railroad
company shall pay, or cause to be paid, to the city of
Chicago the cost and expense of constructing and erect-
ing a new viaduct on Polk street over the railroad tracks
crossing said street, between Canal street and the Polk
street bridge, together with all proper lateral and other
approaches necessary thereto, the money necessary there-
for to be paid by said company, as aforesaid, as fast
as required by the city in paying for the construction
of the said viaduct and the lateral and other approaches
thereto, and shall maintain and keep the same in repair
without expense or cost to the city of Chicago, such con-
struction, maintaining and keeping in repair to be done
pursuant to the direction of the city council, under the
supervision of the commissioner of public works; and
the permission and authority hereby granted are upon
the further express condition that the said railroad com-
pany shall pay to the city of Chicago the expense of
constructing, erecting, maintaining and keeping in repair
viaducts over any of its tracks on any street or streets
crossed by its tracks, except said Polk street above pro-
vided for, with proper approaches thereto, as the city
council may from time to time require: *Provided, however,*
that when any such viaduct, except said Polk street via-
duct above provided for, cannot be constructed across
the tracks of said railroad company without crossing the
track or tracks of some other railroad company or com-
panies, the said Chicago, Burlington and Quincy Rail-
road Company shall only be obliged to join such other
railroad company or companies in paying the expense
of erecting, constructing, maintaining and keeping in

repair such viaduct and approaches, and to pay its fair proportion of such expense as between it and such other company or companies; and if such other railroad company or companies shall not join said Chicago, Burlington and Quincy Railroad Company in paying said expenses, then, when the proportion of said other company or companies shall be otherwise provided, the said Chicago, Burlington and Quincy Railroad Company shall pay what would be its fair proportion of said expense in case such other company or companies should join with it in the payment of said expense as aforesaid. Said viaduct or viaducts, and approaches thereto, to be constructed according to the plans and specifications of the department of public works. Said Chicago, Burlington and Quincy Railroad Company shall furnish sufficient outlets for the private property bounded by Harrison, Twelfth, Beach streets and the south branch of the Chicago river."

South Canal street, from Lumber street to the river, on the side of the property of William O. Tegtmeyer, as appears from the record, is now paved with a cedar-block pavement, in good condition, having been laid only about four years. His assessment was $750. The court confirmed the assessment against McFarlane and Tegtmeyer, and they have appealed to this court and ask a reversal of the judgment.

Smoot & Eyer, and Lackner, Butz & Miller, for appellants.

Charles M. Walker, Corporation Counsel, and Armand F. Teefy, for appellee.

Per Curiam: It is first contended that the court erred in holding that the property of appellants should be assessed for the paving of the approaches to the Polk street and Harrison street viaducts. The evidence shows that within the limits of the improvement provided by

the ordinance there are three approaches leading to the viaducts on Canal street, which extend east and west on streets intersecting Canal street. One of the approaches is at the north end of the improvement on Canal street and leads up to the viaduct on Harrison street; the other two approaches lead up to the viaduct on Polk street. These approaches are each about three hundred feet long. They are the full width of the pavement, and are sup-ported by retaining walls of stone masonry, making about nine hundred lineal feet of pavement upon the approaches for which appellants insist they should not be assessed.

Section 1 of the foregoing ordinance of the city of Chicago, passed December 20, 1880, granted permission to the Chicago, Burlington and Quincy Railroad Company to construct tracks between West Harrison street and West Twelfth street. By section 3 of this ordinance the privileges granted by section 1 were "upon the express conditions that the said railroad company shall pay, or cause to be paid, to the city of Chicago the cost and expense of constructing and erecting a new viaduct on Polk street over the railroad tracks crossing said street, between Canal street and the Polk street bridge, together with all proper lateral and other approaches necessary thereto, the money necessary therefor to be paid by said company, as aforesaid, as fast as required by the city in paying for the construction of said viaduct and the lateral and other approaches thereto, *and shall maintain and keep the same in repair* without expense or cost to the city of Chicago, such construction, maintaining and keeping in repair to be done pursuant to the direction of the city council." It was further provided in this section that "the permission and authority hereby granted are upon the further express condition that the said railroad company shall pay to the city of Chicago the expense of constructing, erecting, maintaining and keeping in repair viaducts over any of its tracks on any street or streets

crossed by its tracks, except said Polk street above pro-
vided for, with proper approaches thereto, as the city
council may from time to time require." There was also
a further proviso that when any such viaducts could not
be constructed across the tracks of said railroad company
without crossing the track or tracks of some other rail-
road company, the Chicago, Burlington and Quincy Rail-
road Company should only be obliged to join such other
railroad company in paying the expense of erecting, con-
structing, maintaining and keeping in repair such via-
ducts and its approaches, which were to be constructed
according to the plans and specifications of the depart-
ment of public works. In other words, in consideration
that the railroad company should construct, maintain and
keep in repair these viaducts and approaches the city
council granted to the Chicago, Burlington and Quincy
Railroad Company the right to lay its tracks in certain
places named in the ordinance. The object of the city
was to protect itself from erecting or maintaining these
viaducts and approaches by reason of the concessions
granted to the railroad. The evidence tends to show the
viaducts and approaches were constructed in 1881, and
paved with cedar blocks by the railroad company at that
time. The word "approaches" must be held to include
the retaining walls, the filling with dirt, and the pav-
ing and roadway, suitable for the use for which it was
intended. This construction of the ordinance is further
sustained by the fact that when the approaches were first
constructed the pavement was not made by the property
owners, but by the railroad company. The ordinance
says the railroad company *shall maintain and keep in re-
pair the approaches*,—not some particular portion thereof,
but the whole structure, and without expense or cost to
the city of Chicago. As counsel for appellants suggest,
just as the word "bridge" would include the floor or road-
way, so "approach" must include the pavement and road-
way thereof.

The case of *Hayes* v. *New York Central and Hudson River Railway Co.* 9 Hun, (16 N. Y. Sup.) 63, seems to be in point. There an action was brought by Thomas Hayes against the New York Central and Hudson River Railway Company for injuries received by him by being thrown from his wagon on the north approach of the bridge crossing the defendant's tracks at West Albany. Upon condition that the railroad company would maintain the bridge, permission had been given to construct this bridge over the crossing at West Albany, and the bridge was constructed and maintained by the defendant. There were approaches to the ends of the bridge, which sloped up to them, and the surface of one of these approaches was out of repair, because of which plaintiff was injured. It was contended by the railroad company that the obligation to construct and maintain the bridge did not include the maintenance of the approaches, but the court held that the approaches were a necessary part of the bridge; that the railroad company could hardly be permitted to erect a bridge and not construct the means of reaching it, and that in undertaking to build the bridge they undertook to make it accessible, and that what they undertook to construct they should maintain in repair. It was further contended by the railroad company, that even though they might be obliged to maintain the approaches, the maintenance did not apply to the surface of the roadway, and that this should be kept in order by the commissioner of highways; but the court, following the case of *North Staffordshire Railway Co.* v. *Dale*, 8 E. & B. 836, held that maintaining the bridge included not only the substructure and the support of the approaches, but the roadway as well.

In the case of *North Staffordshire Railway Co.* v. *Dale*, 8 E. & B. (92 Eng. C. L.) 836, above referred to, the same question arose. In that case a railroad company had carried a road over the railway by a bridge and had

constructed approaches of earth, with embankments to support the same. The depth of the earthwork and embankment, measuring from the surface of the former road, was about fifteen feet on one side of the bridge and about twenty-one feet on the other. The bridge and the approaches were constructed pursuant to a special statute, and pursuant to this statute notice was given to the railway company to put the bridge and approaches in good condition and repair. The order was not complied with, and the question arose as to whether or not the railway company, under this particular act, was obligated by law to maintain in repair the whole of said road, or what part thereof. The phrase of the statute which imposed the duty upon the railway company is, that "such bridge, with the immediate approaches, and all other necessary work connected therewith, shall be constructed and at all times thereafter maintained at the expense of the company." Lord Campbell, C. J., says that it is clear that this section creates the obligation for which the respondent contends: "I cannot imagine language more conclusively creating an obligation. What is to be done in the first instance? It is said that the act distinguishes between a structure and a superstructure, but, clearly, the obligation which it imposes is not discharged by merely putting in arches. The work must be completed so as to be fit for the passage of carriages. Till then the act is not complied with. * * * But when constructed it is to be maintained, and the road as well as the superstructure was to be made. There is no inconvenience. On the contrary, the inconvenience would be the other way if different bodies had to maintain the bridge and the road."

Under the ordinance granting permission to the Chicago, Burlington and Quincy Railroad Company to construct tracks between West Harrison and West Twelfth streets on the express conditions that the railroad company should pay the expense of constructing and erect-

ing the viaduct on Polk street, with all proper laterals and approaches necessary thereto, and all viaducts over its tracks, *and of maintaining and keeping in repair such viaducts and approaches*, it was the duty of that railway company, or other railroads, as provided in the ordinance, to pave the approaches on Canal street to the Polk street and Harrison street viaducts, and it was error to assess the appellants' property for the paving of these approaches, as held by this court in *Cummings* v. *City of Chicago*, 144 Ill. 563.

It is also urged that the ordinance for the improvement is unreasonable, oppressive and void, for the reason that it provides for re-paving with brick that portion of South Canal street between the south-easterly line of Lumber street and the south branch of the Chicago river, now well and sufficiently paved. It appears from the record that that portion of South Canal street between the south-easterly line of Lumber street and a point one hundred and eighty feet south-easterly of that line is that portion of South Canal street lying between the south-easterly line of Lumber street and the river, and embraces the whole Canal street frontage of appellant Tegtmeyer's property. It also appears that portion of South Canal street is now paved with a cedar-block pavement, and is in very good condition, being put down about four years ago; that Tegtmeyer's property is not accessible from South Canal street on account of the approach to the bridge; that access to his property is wholly from Lumber street. It further appears that another portion of South Canal street—a viaduct—within the limits of this improvement, and extending about a block and a half, paved with wooden-block pavement, is omitted from the proposed improvement by the ordinance in question. Why it is excepted does not appear. The one hundred and eighty feet from Lumber street to the river, to which appellant Tegtmeyer objects, is the south end of the proposed pavement. It is not denied but that this cedar-block pave-

ment along the frontage of Tegtmeyer's property was in good condition when the ordinance was passed and at the time of the trial. Is it not unreasonable to compel him to pay for a brick pavement when there is a good pavement along the frontage of his property, which has been in use only about four years, and when it appears another piece of block pavement within the limits of the improvement is omitted? There is nothing in the evidence showing that a brick pavement is required in this particular locality, or that it is a better pavement than block pavement, or that the block pavement is in bad condition.

It appears to us that the ordinance in this case imposes an unreasonable burden on appellant Tegtmeyer, by compelling him to pay for a brick pavement when there is a good cedar-block pavement, which has only been laid about four years and is in good condition. In the case of *Hawes* v. *City of Chicago*, 158 Ill. 653, this court reversed a judgment of the county court of Cook county confirming a special assessment which provided for the laying of a cement sidewalk, because the owner of the property, about six months before, had put down a plank sidewalk in accordance with an order of the common council of the city of Chicago, and which was shown to be in good condition at the time of the passage of the ordinance for the cement sidewalk. We there said (p. 657): "An ordinance must be reasonable, and if it is unreasonable, unjust and oppressive the courts will hold it invalid and void. (*City of Chicago* v. *Rumpff*, 45 Ill. 90; *Tugman* v. *City of Chicago*, 78 id. 405.) The question of the reasonableness or unreasonableness of a municipal ordinance is one for the decision of the court, and in determining that question the court will have regard to all the existing circumstances or contemporaneous conditions, the objects sought to be obtained, and the necessity or want of necessity for its adoption.—*Toledo, Wabash and Western Railway Co.* v. *City of Jacksonville*, 67 Ill. 37; *City of Lake View* v. *Tate*, 130 id. 247; 1 Dillon on Mun. Corp. sec. 327." So

far as the ordinance affects the property of Tegtmeyer it is unreasonable and oppressive, and consequently void.

The judgment of confirmation as to the property of appellants, Hugh McFarlane and William O. Tegtmeyer, will be reversed and the cause will be remanded.

*Reversed and remanded.*