THE CITY OF BELLEVILLE

*v.*

W. H. PFINGSTEN *et al.*

*Opinion filed February 21, 1907.*

1. SPECIAL ASSESSMENTS—*necessity of improvement is primarily a question for the city council.*  The necessity for a particular local improvement is a question committed by the law to the city council, and courts will not interfere to prevent such improvement except when it clearly appears that the ordinance for the improvement is so unreasonable and oppressive as to render it void.

2. SAME—*kind of pavement to be laid is determined by the city.*  The kind of pavement to be laid in a certain street is a question to be determined by the city, and the courts will not ordinarily interfere with such determination.

3. SAME—*what is considered in determining reasonableness of ordinance.*  In determining the question of the reasonableness or unreasonableness of an ordinance the court must have regard to all existing circumstances, contemporaneous conditions, objects sought to be attained, and the necessity or want of necessity for the improvement.

4. SAME—*court should not hold ordinance void for unreasonableness except in clear case.*  All presumptions are in favor of the reasonableness and validity of an improvement ordinance properly passed by the city council, and courts can declare it void only when it is clear, from the proof, that it is unreasonable and oppressive.

APPEAL from the County Court of St. Clair county; the Hon. JOHN B. HAY, Judge, presiding.

H. R. HEIMBERGER, City Attorney, and A. H. BAER, Corporation Counsel, for appellant.

DILL & PFINGSTEN, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

On a hearing in the county court of St. Clair county of the legal objections as to an ordinance for paving with brick, on a concrete foundation, ten blocks of Charles street, in the city of Belleville, the court held that the ordinance providing for said improvement was unreasonable, unjust and oppressive, and therefore void, and an order was entered in accordance with that finding. From this order an appeal was taken to this court.

The sole question decided by the trial court was the unreasonable and oppressive nature of the ordinance. All other matters ruled upon were incidental to the decision of this main question. A large number of witnesses were heard both for the city and for the objectors. Upon the taking of evidence on the hearing, it appears that they divided the proposed improvement into two sections, and the evidence as to six blocks lying south of Main street was presented distinct and separate from that as to the four blocks north of Main street. For South Charles street the objectors presented some thirty witnesses and the petitioner some thirty-eight, who testified as to the character of the present road-bed and the necessity for and the benefit of the proposed improvement. For the four blocks on North Charles street the objectors presented some twelve witnesses and the petitioner some six witnesses. The testimony of these various witnesses as to both sections of the street sharply conflicts on many material points. We shall not attempt to discuss it in

great detail nor to point out which evidence applies especially to North and which to South Charles street. The proposed improvement covered the whole ten blocks, without any reference in the ordinance or papers making any division at Main street. Indeed, taking the two portions of said proposed improvement and considering each as a whole, there does not seem to be any substantial difference in the testimony as to the present character of the street, the reasonableness or oppressiveness of the proposed improvement.

Charles street, for the whole distance in question, appears to have been paved many years ago. The witnesses generally call it a macadam street. The pavement was made of limestone, large limestone rocks about six inches thick and about a foot long being placed at the bottom and this covered with crushed limestone, the entire thickness of the completed pavement being from a foot to a foot and a half. The gutters were also made of rough limestone blocks, not bound together at the crevices but merely filled in with dirt. The size and depth of the gutter vary greatly along the line of the improvement. It extends, on an average, into the roadway about two and a half feet. There is not much positive testimony as to when the original improvement was constructed, many of the witnesses testifying that it had been there as long as they could remember,—probably forty years or more. One witness for the objectors testified very positively that he lived on the street when the pavement was put in, and that it was in 1857.

The witnesses for the objectors testified, with more or less positiveness and certainty, that the present pavement was in fair condition, all admitting that it needed repairing in certain places. Some of them claimed that the pavement was in fine condition and in good repair with the exception of a few places, and that the cost of repairing to put it in first-class condition would be comparatively very small. They also claimed that the improvement, the year around, was in such condition that carriages or traffic teams could travel along,

either with heavy or light loads, without difficulty. The evidence for the petitioner tended to show that the street was worn out, and that in many places there was then no pavement; that the macadam, if it could be so termed, was over half mud; that loaded teams passed with difficulty in many seasons of the year; that the street was full of chuck-holes; that in summer it was dry and dusty, in winter muddy and substantially impassable for foot passengers at the crossings and many times for wagon traffic; that while it was better in some places than in others, taking it all in all it was in bad condition; that the gutters were uneven and unsanitary, and that on account of these conditions frequently offensive smells existed along the line of the proposed improvement, and that the curbing was splitting and cracking and full of holes. The testimony of the witnesses as to the depth of the present macadam or broken stone pavement varied all the way from a foot and a half to four or six inches. By the direction of the court, under agreement of the parties, witnesses went out and dug test pits or holes in the pavement to find its depth and character. According to these witnesses the pavement varied in depth from two to five inches, but their testimony was quite conflicting as to the present character and condition of the crushed macadam.

Much of the testimony given was on the question as to whether this pavement repaired, or any macadam pavement, would be a better pavement for the street than the proposed brick pavement. On this question there was a very wide divergence of views and intense feeling manifested by some of the witnesses. It is contended by the objectors that the street can be repaired, at the highest cost, for not more than $900 to $1000 per block, or a total of $9000 or $10,000 for the entire improvement, so as to place it in better condition for local and general use than it would be with the proposed pavement. As the cost of the entire improvement is $36,098, if this contention of the objectors were shown by the evidence, without question, to be true, then the ordinance would

doubtless, under the law, be unreasonable and oppressive and therefore void. The total amount was assessed against private property, and one-half or more of the property fronting the proposed improvement was objected for. The contention of the city is that the street cannot be made a good street by repair; that this can only be done by an entire new pavement; and it further contends, when a pavement has been in use as long as the present one and is in like condition, the question as to whether the old improvement shall be repaired or a new one put down in its place rests for decision solely with the city council.

The necessity of a local improvement is by law committed to the city council, and courts cannot interfere to prevent such improvement except in cases where it clearly appears that the discretion of the local legislative branch of the government has been abused. This court has held many times that the only ground upon which the court can interfere is that the ordinance is so unreasonable and oppressive as to render it void. The presumption always exists in favor of the validity of an ordinance passed by competent legal authority. The nature, character, locality and description of the improvement must necessarily, under the law, be left very largely to the discretion of city councils in cities and boards of trustees of villages. Whether the pavement of a certain city street ought to be macadam or brick must be determined by the city council, and that question ordinarily is not subject to review by the courts. In determining the question of the reasonableness or unreasonableness of an ordinance the court must have regard to all existing circumstances, contemporaneous conditions, objects sought to be obtained, and the necessity or want of necessity for its adoption. To justify the court in interfering on questions of this kind requires a clear and strong case, but it is the duty of the court, when such case is presented, to protect against arbitrary and oppressive ordinances. Whether an ordinance is unreasonable, arbitrary and oppressive, and hence void,

has been discussed by this court and passed upon, in view of the special facts presented in each instance, in the following among other cases: *City of Chicago* v. *Trotter,* 136 Ill. 430; *Cram* v. *City of Chicago,* 138 id. 506; *Vane* v. *City of Evanston,* 150 id. 616; *Hawes* v. *City of Chicago,* 158 id. 653; *Hughes* v. *City of Momence,* 163 id. 535; *McChesney* v. *City of Chicago,* 171 id. 253; *Walker* v. *Village of Morgan Park,* 175 id. 570; *Field* v. *Village of Western Springs,* 181 id. 186; *City of Chicago* v. *Wilson,* 195 id. 19; *Myers* v. *City of Chicago,* 196 id. 591; *Walker* v. *City of Chicago,* 202 id. 531; *City of Chicago* v. *Brown,* 205 id. 568; *Jones* v. *City of Chicago,* 213 id. 92; *Bush* v. *City of Peoria,* 215 id. 515; *Lamb* v. *City of Chicago,* 219 id. 229; *Gardner* v. *City of Chicago,* 224 id. 254.

The legislative action of the city council, "if properly taken, is conclusive of the propriety of the proposed improvement." (2 Cooley on Taxation,—3d ed.—p. 1244.) The general rule that an ordinance, in order to be valid and binding, must be reasonable, and not arbitrary and oppressive, and that ordinances which do not conform to these requirements will be void, is easily stated. The difficulty comes in applying this general rule to the special facts of a given case. Facts that would justify a member of the city council in voting against an ordinance for local improvements might be entirely insufficient to authorize a court to interfere and declare the ordinance unreasonable. In *Walker* v. *Village of Morgan Park, supra,* we said (p. 573): "It may be that there was no pressing demand for the sidewalk in question, and that it would in the end have been better had its construction been postponed until the population of the village had increased; but that was a matter for the board of trustees to settle for themselves, and when they provide for improvements not needed or demanded by the majority of the people of the municipality, the remedy is an appeal to the ballot-box and the election of men who will heed the wants and necessities of a majority of the people." It is a very

common occurrence that there is a wide difference of views among property owners affected and the people of a given municipality generally, as to whether a local improvement ought to be made. When the ordinance for such improvement has once been properly passed by the municipal council all presumptions are in favor of its reasonableness, and the courts can declare it void only when it is manifestly made to appear by the evidence that it is arbitrary, unreasonable and oppressive.

The great weight of the testimony shows that the pavement on Charles street has been down at least forty years. While it is true that a roadway may be so built that it will last for generations, yet the proof in this record does not show that this street was originally constructed of this lasting character. This court might almost take judicial knowledge of the wearing power of Illinois limestone for road purposes, even if the evidence did not tend strongly to show that much of the limestone placed in this original improvement had largely been worn out or become disintegrated. This is the only conclusion that can be drawn if the pavement was originally from a foot to a foot and a half in thickness, and now, according to the only accurate testimony in the record, varies from two to five inches.

We think only three cases have been called to our attention where this court found local improvement ordinances void because they were arbitrary and oppressive. These are *Hawes* v. *City of Chicago, supra, McFarlane* v. *City of Chicago,* 185 Ill. 242, and *City of Chicago* v. *Brown, supra.* The first concerned an ordinance for putting down a cement sidewalk where, only five months before the passage of the ordinance considered, the property owner, in compliance with a prior ordinance, had constructed in front of the same premises a good plank sidewalk. In the second case the proposed ordinance required a brick pavement to be put down in front of property when there was already a cedar block pavement in the street at that point which had been laid only

four years before, and the evidence showed, without controversy, that it was then in good condition. In the third case the proposed ordinance required an intersection of certain streets to be paved with asphalt when the intersection had previously been paved, within less than four years, with macadam, in accordance with another ordinance of the city, and in this instance also the evidence showed, without contradiction, that the macadam intersection was in good condition and in no need of repair in any respect.

Substantially the same number of witnesses testified here on each side of this controversy. Many of the witnesses for the objectors owned property along the line of the improvement, and while it might be argued that a sound public policy would require that the wishes of the property owners should be considered in matters of this kind, it must be admitted that such interest might tend to prejudice or bias their views of the situation. The great majority of the witnesses for the petitioner appear to have no interest in the question that would especially bias or prejudice them one way or the other. All of the witnesses seemed to be citizens of good standing in the community, many of them, on both sides, of wide experience and great intelligence. We cannot say from this record that it is a strong, clear case where the evidence manifestly shows that the proposed ordinance is arbitrary, unreasonable and oppressive, and therefore void.

It is urged in the brief of appellees that the presiding judge was himself familiar with all the circumstances and facts in this case; that he had lived within a block of the proposed improvement for over forty years. But we do not understand that counsel agreed that he should visit the line of the proposed improvement and his view be considered as a part of the evidence. On the contrary, the record seems to show that this was proposed and objected to.

Under this record the court was not warranted in holding this ordinance void for unreasonableness.

It will be unnecessary for us to consider some minor points as to the admission and rejection of evidence, raised by appellant. We have considered and pass upon only the one question,—that is, the unreasonableness of the ordinance.

The judgment will be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*