(No. 16513.—Reversed and remanded.)
THE CITY OF CARBONDALE, Appellant, vs. CHARLES H. REITH *et al.* Appellees.

*Opinion filed April 24, 1925.*

1. SPECIAL ASSESSMENTS—*city council must determine necessity and character of improvement.* The questions of the necessity of a local improvement, its character, where, when and how it shall be constructed and paid for, are legislative in their nature and have been committed by the legislature to the determination of the city council.

2. SAME—*improvement ordinance must be reasonable.* Where the legislature has granted to a municipal corporation power to legislate on a particular subject without prescribing the terms of such legislation, an ordinance passed in pursuance of the power must be a reasonable exercise of it or the ordinance will be pronounced invalid; and this rule applies to the enactment of an ordinance for a local improvement.

3. SAME—*what must be considered in determining reasonableness of improvement ordinance.* In determining whether an improvement ordinance is reasonable or not the court must take into consideration the object to be accomplished, the means for its accomplishment and all existing conditions and circumstances.

4. SAME—*improvement ordinance is presumed to be reasonable.* Where an ordinance for a local improvement has once been properly passed by the municipal council all presumptions are in favor of its reasonableness, and the courts can declare it void only when it is made to appear by the evidence that it is arbitrary, unreasonable and oppressive.

5. SAME—*what may be considered in determining reasonableness of street improvement.* In determining whether the widening of a street is reasonable or necessary, the use of the street for parking automobiles and for making temporary stops may be considered as well as the accommodation of vehicles passing through the street; and the city council may take into consideration not only the present conditions but also the probabilities of the future, and if its action is not arbitrary or oppressive the courts have no power to interfere.

6. SAME—*when evidence on question of benefits is not proper.* On the hearing of an objection to a local improvement based on the ground that the ordinance is unreasonable and the improvement unnecessary, the court should not admit testimony that the improvement will not be a benefit to the property.

7. SAME—*when court should not view premises to determine reasonableness of improvement ordinance.* After the hearing, before the court, of an objection to a local improvement on the ground that the ordinance is unreasonable and the improvement unnecessary, the court should not, without the knowledge or consent of the parties and before passing on the objection, visit the premises for the purpose of viewing the streets, alleys and properties involved, as it is impossible to determine what was considered by the court in reaching his decision. (*Vane* v. *City of Evanston*, 150 Ill. 616, distinguished.)

APPEAL from the County Court of Jackson county; the Hon. A. D. MORGAN, Judge, presiding.

T. B. F. SMITH, and HOSEA V. FERRELL, for appellant.

HERBERT A. HAYS, and DAVID B. LEVY, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

The city of Carbondale filed in the county court of Jackson county a petition for the levy of a special assessment to pay the cost of the local improvement of streets and alleys of the Central Improvement District, so called. An assessment roll was returned, to which, among other objections, the following objection was made by the owners of property assessed: "The ordinance for the proposed improvement is unreasonable, unjust and oppressive and therefore void for the reason that there has heretofore been constructed on the several streets of this district a brick pavement which is now in good condition, safe, convenient and sufficient for public use and travel, and which meets all the requirements of these objectors." The court after a hearing made a finding in the words of the objection and entered an order dismissing the petition, from which the city has appealed.

The ordinance provided for the widening of the brick pavement already existing on seven city streets,—twelve blocks altogether,—and the paving with concrete of two

alleys, each extending through one block. The limits of the Central Improvement District were Oak street on the north, Marion on the east, Walnut on the south and Normal avenue on the west,—three blocks east and west and four blocks north and south. Through the center of this territory the Illinois Central railroad ran north and south. The east and west streets, beginning at the north, were Oak, Jackson, Main, Monroe and Walnut. The north and south streets, beginning at the west, were Normal avenue, Illinois avenue, (parallel with the Illinois Central railroad and adjoining it on the west,) Washington avenue, (parallel with the Illinois Central railroad and adjoining it on the east,) and Marion street. All these streets were paved with brick pavement about 1908. The two alleys had never been paved. They extended from Normal avenue east in the middle of the blocks on the north and south side of Main street to a north and south alley extending through the centers of those blocks. The north and south streets were each 66 feet wide. Of the east and west streets, Oak, Jackson and Walnut were each 74.25 feet wide, Monroe 60 feet and Main 82.5. The ordinance provided for widening the pavement on Normal avenue from Jackson to Walnut street, three blocks, from 24 to 36 feet; Illinois avenue from Jackson to Oak, one block, from 28 to 42 feet; and from Monroe to Walnut, one block, from 33 to 42½ feet. Between Normal and Illinois avenues the pavements were to be widened, Oak street, one block, from 28 to 36 feet; Jackson, one block, 28 to 40 feet; Monroe, one block, 28 to 40 feet; Walnut, one block, 24 to 36 feet. Main street was to be widened from 30 to 50 feet from Marion street to Normal avenue, two blocks, the block between Washington and Illinois avenues being occupied by the tracks of the Illinois Central railroad. This district included the business part of the city of Carbondale, the three principal streets of which were Illinois avenue, Washington avenue and Main street. The business center may be said to be the crossing of Main

street and Illinois avenue. That is also the crossing of two State bond issue roads, Route 2, north and south from Cairo to the Wisconsin State line, passing through Carbondale over Illinois avenue, and Route 13, east and west from St. Louis to Shawneetown, passing through Carbondale over Main street. The pavement which it is now proposed to widen is a brick pavement in good condition, and it is not proposed to disturb it but to widen it by removing and re-setting the present curb and constructing additional pavement on each side of the present pavement. When the pavement was first constructed, in 1908, it was sufficient for the accommodation of travel. There were no hard roads, the automobile had not come into general use, there was little travel and there were no through routes of travel. For a number of years the increase in traffic was slight, and it was only within recent years that any hard road existed connecting Carbondale with any adjoining town, but with the construction of the State bond system of hard roads and the general use of the automobile the conditions have changed, so that the present pavement is insufficient to accommodate the traffic. Not only is there much through travel on the two main routes which cross in the center of Carbondale, but the general use of the automobile has increased the local traffic to such an extent that much of the time there is great congestion in the streets.

A number of witnesses testified as to traffic conditions, but there was no difference of opinion as to the fact of the congested condition of traffic in this territory much of the time. The only dispute was in regard to the degree of it. It is to be inferred from the evidence that there are no parking places other than the streets, with the result that when traffic is heavy, lines of parked vehicles occupy both sides of the streets, and progress through them is difficult to such an extent that it is said that in some places the streets become practically one-way streets, and that be-

tween the parked cars on either side of the street it is difficult for cars meeting to pass, and frequently the car at one end of the street must wait until a car coming in the opposite direction has passed through to the end of the block or must back out.

A good deal of evidence was introduced as to whether this territory was business territory or not. Of course, as far as Illinois avenue, Washington avenue and Main street are concerned, there can be no question as to the character of those streets. The other streets are not so entirely given over to business as are the three mentioned, but they are all adjacent to the business streets and are more or less devoted to business occupations, unless Normal avenue may be excepted, which is occupied in large part by churches and apartment buildings and on which is also the site of a proposed hotel. Parking space is desirable, if not essential, for apartment buildings as well as churches, and the evidence shows the congested traffic conditions which have been described as existing in Normal avenue, perhaps not to so great an extent as in some of the other streets but still to such an extent as to require correction. The necessity of providing relief from the congestion of traffic is apparent. It was shown that accidents happened frequently from collisions, and that the crowded condition of the streets made it more difficult for the fire department to extinguish fires and increased the fire hazard.

The desirability of the widening of the streets, so far as Illinois avenue is concerned, is conceded. No objections have been filed in regard to any property on Illinois avenue, but it is contended that the same reasons do not exist for widening the pavements on the other streets. If the streets were to be used only for the accommodation of vehicles passing through the city, in constant motion, it might be argued that there was no necessity for wider streets, but such conditions do not exist. Streets are used not only to go from place to place in the city but vehicles stop tempo-

rarily in the streets. It is desirable not only for the people who occupy the vehicles to be able to stop temporarily and visit the various places for the transaction of their business, but it is also desirable for the people who occupy those places and wish to transact business with the public. If the streets were simply provided for the purpose of enabling vehicles to pass by, their advantage to the places of business on the street would not be very apparent.

It is suggested that the difficulty might perhaps be met by requiring vehicles to park on only one side of the street. It is possible that the difficulty might be lessened by traffic rules regulating times and places for parking, but it is apparent that the condition shown by the evidence requires some remedy. What that remedy should be was a question which the city council was called upon to determine, and the ordinance in question records its conclusion. The questions of the necessity of a local improvement, its character, where, when and how it shall be constructed and paid for, are legislative in their nature and have been committed by the legislature to the determination of the city council. When that determination has been expressed in an ordinance it is in general conclusive but is still subject to the general rule that where the legislature has granted to a municipal corporation power to legislate on a particular subject without prescribing the terms of such legislation, an ordinance passed in pursuance of the power must be a reasonable exercise of it or the ordinance will be pronounced invalid. (*Hawes* v. *City of Chicago*, 158 Ill. 653; *Chicago and Alton Railroad Co.* v. *City of Carlinville*, 200 id. 314; *City of Chicago* v. *Brown*, 205 id. 568.) In determining whether the ordinance is reasonable or not the court must take into consideration the object to be accomplished, the means for its accomplishment and all existing conditions and circumstances. The presumption is always in favor of the validity of the ordinance, and to justify the court in interfering on the ground that an ordinance is unreason-

able requires a clear and strong case. If such a case is presented it is the duty of the court to protect the tax-payer against an unreasonable, arbitrary and oppressive ordinance and to declare it void, but before doing so the evidence must be such as to clearly satisfy the court that the council's action is unreasonable and oppressive, and if there is room for a reasonable difference of opinion the action of the council is final. (*City of Chicago* v. *Kehilath Anshe Mayriv,* 284 Ill. 210; *Village of Bradley* v. *New York Central Railroad Co.* 277 id. 608; *City of Marengo* v. *Eichler,* 245 id. 47.) A mere difference of opinion between the court and council is not enough. Facts that would justify a member of the city council in voting against an ordinance for a local improvement might be entirely insufficient to authorize a court to interfere and declare the ordinance unreasonable. When the ordinance for such improvement has once been properly passed by the municipal council all presumptions are in favor of its reasonableness, and the courts can declare it void only when it is made manifestly to appear by the evidence that it is arbitrary, unreasonable and oppressive. *City of Belleville* v. *Pfingsten,* 225 Ill. 293.

The cases in which ordinances for the making of local improvements have been held unreasonable and void which have been called to our attention are cases in which no necessity could reasonably be said to have existed for the making of the improvement, as in *Hawes* v. *City of Chicago, supra,* where the ordinance in question provided for putting down a cement sidewalk though the property owner had constructed in front of the same premises a good plank sidewalk, in compliance with a prior ordinance, only five months before the passage of the ordinance in question; in *McFarlane* v. *City of Chicago,* 185 Ill. 242, where a brick pavement was required by the ordinance to be constructed in front of property where there was already a cedar block pavement in good condition, which had been laid only four years before; in *City of Chicago* v. *Brown,*

*supra,* where the ordinance in question required an intersection of two streets to be paved with asphalt although it had been paved within less than four years, in accordance with another ordinance of the city, with macadam, which was in good condition and in no need of repair; in *South Park Comrs.* v. *Pearce,* 248 Ill. 578, in which the ordinance imposed upon property owners the burden of paying for a pleasure driveway and the ornamentation and embellishment of a boulevard when there was already a complete system of street improvements recently put in and in good condition, which were required to be taken out and destroyed. Here there is no doubt about the existence of a condition which requires some action to be taken to remedy it. The council had the right and was under the duty in the first place to determine upon the remedy, and in accordance with its judgment passed the ordinance now in question. It can not be said that the means adopted are not appropriate to the object intended to be accomplished. There might be some difference of opinion as to whether or not it was the best means. It seems to be agreed as to Illinois avenue that it was a reasonable means. If there is any difference of opinion as to the widening of the pavement on the other streets, it is to be remembered that it was the duty of the council not only to take into consideration present conditions but to have in mind the probabilities of the future, and unless its action can be said to be arbitrary and oppressive the court has no power to interfere with it. The court erred in holding that the ordinance was unreasonable.

The appellees offered testimony of various witnesses to prove that the improvement would not be a benefit to the property, and over the objection of the petitioner the testimony was received, and this is assigned for error. This testimony had no bearing on the determination of the objection as to the reasonableness of the ordinance and should have been excluded. *Village of Bradley* v. *New York Central Railroad Co. supra.*

The bill of exceptions, after setting out the proceedings on the trial and certifying that it contained all the evidence, continues: "The court on its own account after hearing the evidence and before passing upon the objections and without the knowledge or consent of either petitioner or the objectors personally went upon and over the proposed district and viewed the streets, alleys and properties in their then present condition, to which action of the court the petitioner objects and excepts." It is argued by the appellant that this action of the judge was erroneous. It was held in *Vane* v. *City of Evanston,* 150 Ill. 616, that it was within the power of the court, in its sound discretion, to permit the jury in a special assessment proceeding to view the premises to enable them better to apply the evidence, but the facts ascertained by the jury upon such view could not of themselves be considered as evidence in arriving at the verdict, the rule being different in such cases from that in condemnation cases, the court saying that the jury were not authorized to consider any fact bearing upon the merits of the controversy derived from such view. It was also said that the effect of the view might be controlled by an instruction to the jury. In this case the effect of the view could not be controlled by any instruction. The parties had no means of determining what the court took into consideration in deciding the case. The bill of exceptions merely shows that without any agreement the judge went over the district and viewed the streets, alleys and properties in their then condition, but the record does not show, and the appellant has no way to ascertain, upon what the court based the finding. It was error for the court to thus visit the premises without the knowledge or consent of the parties to the cause.

The judgment will be reversed and the cause remanded for a hearing upon the remaining objections.

*Reversed and remanded, with directions.*