(No. 20324.—

THE CITY OF BATAVIA, Appellee, *vs.* ROBERT J. WILEY *et al.*
Appellants.

*Opinion filed December 18, 1930—Rehearing denied Feb. 6, 1931.*

GEORGE P. FOSTER, and PHILIP J. McKENNA, for appellants.

EMIL J. BENSON, City Attorney, and LEONARD C. MEAD, (TOLMAN, SEXTON & CHANDLER, of counsel,) for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

This is an appeal from a judgment of the county court of Kane county overruling legal objections and a judgment of confirmation in a proceeding for the paving of certain streets in the city of Batavia by special assessment. The court on

overruling the legal objections fixed a day for the trial of the question of benefits. The objectors waived further controversy, and the court thereupon entered judgment confirming the assessment roll as reported by the commissioner.

The objections urged were: (1) That the ordinance provided for a double improvement; (2) the distribution of the cost was inequitable; (3) property especially benefited was omitted and not assessed; (4) variance between the ordinance and the estimate; and (5) the improvement was unreasonable and unnecessary.

The improvement consists of paving certain streets and placing storm-water sewers in a portion thereof.

The facts on which the claim of a double improvement is based are as follows: Ten blocks in the northern part of the city of Batavia, and nine blocks, most of which lie east and south of this improvement, are included in the district formed. The two parts of the district are not joined except at the northeast corner of the intersection of Church street, which extends east and west, with Prairie street, extending north and south. The west end of the proposed improvement on Church street, which counsel say is the northwesterly terminus of the east part of the district, terminates at the east boundary line of Prairie street where it intersects Church street, while the south end of the improvement on Prairie street, described as the southeasterly terminus of the west portion of the district, terminates at the north line of Church street at its intersection thereof with Prairie street. Church street at this intersection, and west, was already paved. The argument is that this is not a connected improvement for the reason that it is impossible to drive from the eastern part of the district onto the western part without getting off the improvement while going around the northeast corner of the intersection of Church and Prairie streets. Prairie street bounds the eastern part of the proposed assessment district on the west and is a paved street to its intersection with Church street.

VanBuren street, which is the first street west of Prairie and which also extends north and south, is likewise paved to its intersection with Church street, so that with the proposed improvement the paved portion of Batavia presents a connected series of blocks surrounded by paved streets. Counsel for appellants argue that unless it can be shown that the property in one portion of this taxing district is benefited by the improvement of the other portion the proposed improvement is double and will not be permitted.

The extent of an improvement and what shall be included within an improvement district lies within the legislative discretion of the city council and courts will interfere only to correct a clear abuse of that discretion. (*City of Pekin* v. *Grussi,* 338 Ill. 196; *City of Peoria* v. *Cowen,* 326 id. 616; *Church* v. *People,* 179 id. 205; *Davis* v. *City of Litchfield,* 145 id. 313.) These cases have approved the rule laid down in *City of Springfield* v. *Green,* 120 Ill. 269, that the similarity of the improvement proposed to be made and the situation of the property to be assessed with respect to it afford a more satisfactory test as to whether they might all be embraced in a common scheme as one improvement than their actual connection or physical contact with one another. A number of the objectors testified that the portion of the proposed improvement in one part of the district did not benefit the property in the other portion. It is not contended, and no testimony was offered to show, that the property in one end was assessed for more than it would otherwise have been assessed had the streets in the other portion of the district not been paved. The character of the property affected is, so far as the record shows, approximately the same. It is argued that the property owners of one part of this district, in going from their property to the business section of the city, would not use the improvement on the other part. It might be argued as to practically any paving improvement that in going from one part of it to the business section of the city or to other

frequented places other portions of the proposed improvement will not be used. It might, however, in this case with equal logic be said that residents living in the east portion of this district who wish to go into the west portion thereof would find the improvement a convenience to them. In a sense the improvement of any street is of benefit to any property of the municipality by making the property on the improved street more accessible to those living elsewhere in the city who have business or other reason to visit such property. These matters are not of great weight in considering whether an improvement may be included in a single proceeding. Absolute equality is not attainable, and unless it be clearly shown that substantial injury results from the inclusion of more than one street in an improvement or that such a plan is not workable, it would cause unnecessary expense to require each street to be improved by a separate proceeding. The question is, as stated, a legislative one, and the discretion of the city council will not be reviewed in the absence of clear evidence of abuse thereof. We are of the opinion that abuse of such discretion does not appear in this case and that the city council was within its legislative rights in including these various blocks within the improvement district.

It is also argued that the fact that storm-water sewers in the east portion with outlets at places different from those in the west portion shows the improvement was not single. Such a fact, however, may merely evidence good engineering, and may occur in the improvement of a single street where the elevation in a central portion of that street prevents a continuous sewer with one outlet. This does not make the improvement double. *City of Elmhurst* v. *Rohmeyer,* 297 Ill. 430; *Church* v. *People, supra.*

Counsel argue, however, that the undisputed evidence in this case shows that property in either of the separate portions of the district will not be benefited by the improvement in the other portion, and that under the rule laid down

in *Davis* v. *City of Litchfield, supra,* unless such benefit is so shown the improvements cannot be joined. While the objectors testified that their property would receive no benefit from the improvement in the other portion of the district, yet such testimony might be given concerning any improvement covering an extended area. The paving of the streets in this district completed the improvement of a large section of the city and cannot be said to be two separate improvements. We are of the opinion that it is not shown in this case that the action of the city council in joining these various blocks in this improvement is so unreasonable and oppressive as to render it void. If there is room for reasonable difference of opinion the action of the city council is final. Presumption always exists in favor of an ordinance passed by competent legal authority. (*City of Pekin* v. *Grussi, supra; City of Peoria* v. *Cowen, supra.*) Cases cited by counsel for appellants do not hold a contrary view.

It is also argued that the cost of the improvement is inequitably distributed so far as the property of appellants is concerned. This issue is not to be confused with the questions whether property is assessed more than it is benefited or more than its proportionate share, as those are questions of benefit to be tried before a jury. They are not identical questions. Whether the plan of distribution of the cost of the improvement is equitable is a question for the court. (*Village of Oak Park* v. *Swigart,* 266 Ill. 60.) While no direct testimony appears stating what method was used for the distribution of the assessment, it is evident from a consideration of the various amounts thereof, when compared with the properties involved, that the commissioner fixed the assessment on frontage at $6.60 per foot as to the pavements 25 feet in width and a proportionate increase for the wider pavement. Where corner lots also sided on the improvement the side footage was assessed at forty-three per cent of the frontage rate to a depth of 165 feet and at the full frontage rate for the balance of the depth if deeper

than 165 feet. This apparently was on the theory that the portion of the lot on the side street over 165 feet might be improved as fronting on such side street. Where a corner lot did not also side on the improvement the frontage assessment, only, was imposed. This was evidently in consideration of the fact that the side footage had been, or might be, assessed in another like improvement on such side street.

Appellants argue that the method adopted, whatever it was, resulted in an inequitable distribution of the cost. They offered the testimony of one witness who was engaged in the sale of real estate, though not a resident of Batavia, who testified that he visited it about four times per year, and who evidently based his opinion given on the assumption that all lots of equal width are benefited in exact proportion to their depth. The record affords no evidence in this case on which to base such an assumption, and, indeed, it cannot be so based. Benefits are measured by the appreciation of the fair cash market value of the property due to the improvement. It is a matter of common knowledge that by reason of the location or character, or both, of lots involved in an improvement of this character those of lesser depth may be benefited by the improvement more than those of greater depth. The assumption being false, opinions based thereon cannot aid in overcoming the *prima facie* case made out by the city. This witness testified that corner lots are worth ten per cent more than inside lots and that the increase of the value by the improvement would be ten per cent. Comparative valuations of corner and inside lots in any given assessment district cannot be determined by such generalization. It seems obvious that no such assumption can be indulged. A corner lot may, by reason of its character or for other reasons, be worth less than an inside lot before the improvement and yet be made worth more than the inside lot by the improvement. Testimony based on such an assumption cannot aid, in the absence of proof, in comparison of the character of the vari-

ous lots. Area is not controlling, though it may be considered, with frontage, in determining the matter of benefits. (*City of Chicago* v. *McKinlock,* 256 Ill. 38.) The public officer making the assessment is presumed to do his duty, and an assessment roll will not be modified merely because of a difference in opinion as to whether he exercised sound judgment, unless the assessment is clearly inequitable or unjust or his action so improper as to amount to fraud. (*City of Chicago* v. *McKinlock, supra; Allen* v. *City of Chicago,* 176 Ill. 113; *Pike* v. *City of Chicago,* 155 id. 656.) Regardless of the plan followed, private property cannot be assessed more than it is benefited. (*City of Staunton* v. *Bond,* 281 Ill. 568.) In *Village of Downers Grove* v. *Findlay,* 237 Ill. 368, relied on by appellants, the question was whether the distribution between inside lots and corner lots was equitable. Assessments on inside lots were $180.79 each and on corner lots $419 each. Evidence was heard as to values of various inside and corner lots, and this court found that no such difference in character of the lots involved existed as to justify the difference in assessment and reduced the assessments on the corner lots. In this case, as we have seen, the corner lots were assessed the same per front foot as the inside lots, while the sideage of such corner lots abutting on the improvement was also assessed. Unless there be substantial inequality in the plan of distribution of the assessment over the various lots courts will not interfere with such plan. The mere fact that one lot may be worth more than another is not, of itself, ground for assessing it more if the appreciation of the fair cash market value of such lots due to the improvement is the same. Whether any property is assessed more than it is benefited is not involved in determining whether the plan of distribution of assessments is equitable. We are of the opinion that there is not here such a disparity as to justify the conclusion that the assessments were inequitable in their distribution.

It is also argued that certain property was omitted from the assessment district which should have been assessed, and appellants' expert witness testified that certain lots, though not abutting on the improvement but which are adjacent to lots abutting thereon, were benefited by the improvement and should have been assessed. Counsel cite in support of this objection *City of Chicago* v. *Farwell,* 284 Ill. 491, and *City of East St. Louis* v. *Vogel,* 276 id. 490. The former was a street-widening case, in which it was held that business property not on the line of the improvement was nevertheless specially benefited by relief from traffic congestion and should have been included in the taxing district. In the *Vogel case* the property which the city saw fit to include in the taxing district did not abut on the street paved, but the evidence showed that the only access from it to the city was over this paved street and that therefore the city was justified in including it. The question in this case is not whether it would have been an abuse of discretion had such near-by lots been included, but whether the act of the commissioner was illegal because he did not include such property in the taxing district. So far as is practicable all property affected ought to bear the burden of local improvements equally, but this principle of uniformity and equality applies only to property especially benefited by a local improvement and not to property receiving a benefit general to other property of the municipality. (*City of Chicago* v. *Smith,* 310 Ill. 244.) The question arising here is, primarily, whether the commissioner or superintendent of special assessments negligently or improperly omitted from the assessment the property which objectors claim should have been inserted. The law presumes that he exercised sound judgment and discretion, and this presumption will be indulged until the contrary is shown. It will be inferred until proof to the contrary appears that some good reason, arising out of the character and situation of the property, existed for not including such property,

and unless he acted so negligently and improperly in spreading the assessment that in effect his acts were fraudulent the assessment will not be re-cast. (*City of Chicago* v. *McKinlock, supra; Clark* v. *City of Chicago,* 229 Ill. 363; *Betts* v. *City of Naperville,* 214 id. 380; *Allen* v. *City of Chicago, supra.*) Here residents on the lots of the exclusion of which appellants complain could not go upon the pavements to be laid by this proceeding without first traveling over an unpaved street. While the distance of such travel is not great, no standard is suggested by which it can be determined what lots so located on a side street should be assessed and what should not. Indeed, no such line of demarcation is perceived. Such a question must necessarily be left, in the first instance, to the judgment of the commissioner making the roll, subject to review as hereinbefore stated. We are of the opinion that the record does not justify re-casting the roll in this particular.

The fourth objection is that there is substantial variance between the ordinance and the estimate. The particulars in which such variance is claimed to exist are as to certain storm drains and tunneling in connection therewith. It is pointed out that in the estimate the items as to the cost of such storm drains included excavation and back-filling, while the ordinance provided that this work should be tunneling and back-filling. It does not appear either in the record or from arguments of counsel why tunneling and back-filling and excavating and back-filling should not be considered substantially the same. The statute requires that the estimate shall be itemized to the satisfaction of the board of local improvements. It is sufficiently itemized, so far as the property owners are concerned, if it is sufficiently specific to give them a general idea of the estimated cost of the substantial elements of the improvement. (*Patton* v. *Village of Palestine,* 304 Ill. 489; *Hulbert* v. *City of Chicago,* 213 id. 452.) In *Village of Lovington* v. *Gregory,* 287 Ill. 169, the objection was that a variance existed between the

ordinance and the estimate concerning certain cement filler and therefore failed to show the cost of a component element of the improvement. This objection, however, was overruled and the rule with reference to the particularity of estimates again announced. We are of the opinion that there is no variance in this case.

It is also argued that the ordinance was unreasonable and unnecessary. Evidence touching this objection was offered on behalf of appellants and likewise on behalf of the city. For the former, witnesses testified that some of these streets were already surfaced with gravel and cinders of a width of eighteen feet. The testimony of the superintendent of streets and the chief of the fire department was that at times, during thaws and heavy rains, portions of these streets were impassable; that during such times in a portion of the surfaced streets the fire wagons were required to remain in the middle of the street, and that parking along the curbs was impossible under such conditions. Practically all of this territory is improved by residences. The reasonableness of an improvement ordinance is first to be determined by the city council. Review of its action can be had only where it is arbitrarily oppressive and beyond the bounds of reason. Unless evidence clearly satisfies the court that the city council's action is unreasonable and oppressive courts will not interfere with its judgment. If there is room for reasonable difference in opinion the action of the council is final. (*City of Carbondale* v. *Reith,* 316 Ill. 538; *City of Chicago* v. *Kehilath Anshe Mayriv,* 284 id. 210; *City of Belleville* v. *Miller,* 257 id. 244; *Clark* v. *City of Chicago, supra.*) Counsel for appellants have cited cases wherein it was held that the ordinances there considered were unreasonable. In those the territory affected was uninhabited and not ready for development, or improvements had been recently constructed and were in good condition. Cases of that character are not of assistance in determining the questions involved here.

We are of the opinion that the proceedings in this case are not open to the objections urged and that the county court did not err in so holding. The judgment of that court is therefore affirmed.

*Judgment affirmed.*