(No. 35087.—

THE VILLAGE OF NORTHBROOK, Appellant, *vs.* CARL T. STEERUP *et al.*, Appellees.

*Opinion filed May 22, 1959.*

Tom L. Yates, of Chicago, (Donald H. Haider, of counsel,) for appellant.

Paul M. Wade, of Chicago, (Charles E. Pope, of counsel,) for appellees.

Mr. Chief Justice Daily delivered the opinion of the court:

This is an appeal by village of Northbrook, a municipal corporation, from a judgment of the county court of Cook County partially sustaining objections of Carl T. Steerup to a special assessment levied against certain lots to pay for paving and the installation of curbs, gutters, storm sewers and other appurtenances on Illinois Road. We have jurisdiction on direct appeal. Ill. Rev. Stat. 1957, chap. 24, par. 84—95.

The area to be improved on Illinois Road is one block long and runs east and west. The road connects with Spruce Street at a dead end on the east and runs to a railroad right of way on the west. Property lying south of Illinois Road is outside the village limits, while the lots against which the assessment is proposed to be levied lie to the immediate north of the road. The west end of Illinois Road connects with an alley, or lane, which runs north and south parallel to the railroad, and a private drive, leading to a manufacturing plant located one-half mile south of the village limit, also runs to the west end of Illinois Road and connects with the alley at that point. Illinois Road is 30 feet wide and, while dedicated as a public street, has never been improved so that it is presently almost impassable to vehicular traffic due to weeds, depressions and, at times, the free flow of water from the land to the north. Eight lots, referred to in this record as numbers 10 to 17 inclusive, are involved and are platted so as to front upon Illinois Road.

Each has a frontage of 55 feet and a depth of 135 feet with the exception of lot 17 which has a frontage of 45.26 feet. The estimated total cost of the improvement, as reflected by the assessment roll, is $9,918.99, for which lots 10 to 16 were each assessed $1,267.94 and lot 17 a sum of $1,043.94.

Three of the eight lots are improved while five are vacant and, with respect to the latter, a village ordinance was introduced in evidence which prohibits the erection of any building or habitation unless public service facilities are available. The owner of lot 12, it appears, was denied a building permit because there was no improved street past the lot. The objector owns two of the lots in question, being lots 10 and 11. Lot 10, which is at the corner of Spruce Street and Illinois Road, is improved with a two-story, one-family, brick residence and a double garage, both of which face Spruce Street. A driveway connecting to the garage likewise enters Spruce Street. Lot 11 is vacant, except that objector's garage encroaches upon it for a strip one foot deep and 22 feet long, and a witness for the village testified that its highest and best use would be for the construction of a residence thereon. Objector's residence is 35 feet from the southern boundary of lot 10 and, as the improvement is planned, there will be a 10-foot strip between such boundary and the north curbing of Illinois Road.

Upon the village's application to the county court for confirmation of the special assessments, Steerup filed objections, among them being an allegation that lots 10 and 11 would not be benefited by the improvement, and prayed that the proposed assessment against his property be deleted from the assessment roll. All legal objections were stricken and, a jury being waived, a hearing was had before the court on the question of benefits. After hearing evidence of both parties on the issue the court found that lot 10 would not be benefited by the improvement and denied

confirmation as to it. It did, however, confirm the assessments as to the balance of the lots, specially finding that lot 11 would be benefited only in the amount of $1,267.94 as set forth in the roll. The village appeals, contending that the findings with respect to lots 10 and 11 are against the manifest weight of the evidence and that the court, in view of its finding as to lot 10, committed error when it failed to find that a deficiency existed and to spread such deficiency over the remaining lots, including lot 11.

In assessment cases of this nature where the question of benefits alone is under consideration, the burden is on the municipality to show that the property is benefited in the amount assessed. (*City of Carlinville* v. *Anderson*, 303 Ill. 247.) The assessment roll as returned by the appropriate official, or as revised and corrected by the court on hearing of legal objections, is *prima facie* evidence of the correctness of the amount assessed against each objecting owner, and in the absence of evidence to the contrary entitles the municipality to have the assessment roll confirmed. (*City of Monticello* v. *LeCrone*, 414 Ill. 550.) The objector has the burden of overcoming the *prima facie* case made by the roll, (*Village of River Forest* v. *Chicago and Northwestern Railway Co.* 197 Ill. 344,) however, the effect of our Local Improvement Act is such that when the objector introduces competent evidence that his property will not be benefited, or that it is assessed more than its proportionate share of the cost, the roll ceases to have any weight as evidence, (*City of Peoria* v. *Peoria Railway Co.* 274 Ill. 48; Ill. Rev. Stat. 1957, chap. 24, par. 84—49), and the municipality must thereafter sustain its burden by competent evidence. (*City of Carlinville* v. *Anderson*, 303 Ill. 247.) No claim is made that the objector failed to overcome the *prima facie* case, or that the village failed in carrying its burden of proof, thus the principal issue before us is whether the findings with respect to benefits to lots 10 and 11 are against the manifest weight of the evidence.

William Pettinger, a real-estate broker with some experience as a township assessor, testified for the objector and, after stating lots 10 and 11 should be considered as one tract, expressed an opinion that the tract and buildings thereon had a fair market value of $35,000 which would be depreciated to $32,000 by reason of the proposed improvement to Illinois Road. When cross-examined he stated that, assuming lot 11 could be built upon despite the slight encroachment of the objector's garage, he would place a value of $6,000 on lot 10 and of $4,000 on lot 11, and that the improvement of Illinois Road would decrease the value of lot 10 while increasing the value of lot 11 by $1,000. Factors which prompted his opinion as to a decrease in value of lot 10 were: (1) that, as a general rule, property on a dead-end street such as Spruce Street carries a higher value than property having traffic on two sides; (2) that the 10-foot strip from curb to lot line on Illinois Road, as contrasted with a 16-foot strip existing on Spruce Street, would be an increased hazard to children residing on lot 10, and (3) that the improvement, because of the nearby factory, would tend to increase the volume of traffic which would flow by the objector's house on two sides. As to the balance of the lots involved, Pettinger estimated their value as being $4,000 before the improvement and $5,000 after, but conceded he had not considered their value in light of ordinance restrictions which prohibited building unless there was an improved street. Although the village now contends that Pettinger was not a competent witness and that his opinions were based on hearsay, it is enough to point out that such an objection comes too late on appeal. *County Board of School Trustees* v. *Elliott*, 14 Ill.2d 440, 445; *Holland* v. *People's Bank and Trust Co.* 303 Ill. 381, 394.

Testifying on behalf of the village was James Spellman, a resident and real-estate broker who had personal knowledge of the property in question. Based upon recent sales

of property similarly located in the area it was his opinion that the fair market value of lot 10 was $4,500 and that the installation of storm sewers, curbs, gutters and pavement on Illinois Road would increase its value by approximately $1,300. With regard to the other lots assessed, including lot 11, it was his opinion that their market value would not be over $2,000 in their present condition, but that they would have value of approximately $4,500 once the improvements were completed. He likewise expressed his belief that traffic conditions would not decrease the value of lot 10 and that little, if any, of the factory traffic would utilize Illinois Road and Spruce Street.

Lowell Mueller, the village fire chief, testified there was a fire hydrant located on Illinois Road midway between Spruce Street and the railroad, but that it was presently no protection to the area because the condition of the road made it inaccessible to mobile equipment. He also testified generally that dead-end streets made it difficult to fight fires because they made for cumbersome manipulation of the equipment in and out of the area. On cross-examination he conceded there was another hydrant at Spruce and Oak Streets, approximately 250 feet from the objector's residence, but stated that a fire of any magnitude would require the utilization of more than one hydrant and on this basis expressed an opinion that all of the lots along Illinois Road would be benefited by the improvement. Along the same lines the police chief testified that Illinois Road was not accessible to vehicles and that lot 10 would be benefited by better police protection since the improvement would permit patrol vehicles to drive west and observe the rear of the objector's premises. Two witnesses for the village described a ditch across Illinois Road which drained off water from the north to the south.

The objector testified in rebuttal and, although admitting Illinois Road was mostly weeds, stated that a vehicle could be driven across it from Spruce Street. On cross-

examination, however, he conceded there was a ditch across the road and stated he had helped a neighbor dig it in order to release water that accumulated at the rear of the vacant lot (lot 12) immediately to the west of his property.

Considering the record in its entirety, it is our opinion that the trial court's finding that lot 10 would receive no benefit from the improvement is contrary to the manifest weight of the evidence. In special assessment proceedings this court has consistently held that in no case may the assessment exceed the benefit which the improvement will confer upon the property, and that the benefit must be a real, actual benefit—not resting upon conjecture. (*Illinois Central Railroad Co*. v. *City of Chicago,* 141 Ill. 509; *City of Springfield* v. *Gillespie,* 335 Ill. 388; 9 I.L.P., Cities, Villages, etc., sec. 886.) At the same time, however, it is likewise true that elements of damage claimed as a set-off against benefits may not be imaginary or speculative, or remote and inappreciable, or of such a nature that they may or may not occur in the future. (*Village of River Forest* v. *Chicago and Northwestern Railway Co*. 197 Ill. 344.) Here the principal foundation of objector's claim that lot 10 will not be benefited by the improvement is based upon the opinion of the witness Pettinger that, due to a nearby factory, the improvement would create an increased traffic hazard which would in fact decrease the value of the objector's lot.

While it may be conceded that traffic conditions could affect the value of land, and that an alteration of traffic conditions may in some instances be a proper factor in determining benefits to land specially assessed, (see: *City of Chicago* v. *Farwell,* 284 Ill. 491,) the objector's proof in this case fails to show that such factor has any competence in this case. The factory in question is one-half mile south of Illinois Road, it has approximately 150 employees, it manufactures food dispensing equipment and is entered both from Techny Road, a main artery of traffic, and

from a private road at the rear which, as previously described, connects with a lane or alley that extends to the north along the west end of Illinois Road. Whether the factory generates any heavy industrial traffic is left unanswered in the record. Pettinger, the objector's witness, admitted he did not know how many vehicles presently used the alley and private road to reach the factory premises and conceded that all traffic using them would not necessarily elect to leave or enter the private road drive by way of Spruce Street and Illinois Road. The village's witness, Spellman, stated on the other hand that the majority of the factory traffic utilizes Techny Road, and that vehicles using the private road normally stay on the alley until they reach Walters Avenue, three blocks north of Illinois Road, with but a very few turning off onto Oak and Elm streets which connect with the alley also to the north of Illinois Road. Based upon these existing traffic patterns it was his opinion that a maximum of no more than one per cent of the factory traffic would pass over Illinois Road and Spruce Street, once the improvement of the former was effected. On the state of the record, and particularly in the absence of proof by the objector either as to the volume or nature of the traffic the improvement will bring past his premises, Pettinger's opinion that traffic would increase to such a degree as to depreciate the value of lot 10, must be held to rest purely upon conjecture and speculation.

Still other factors relied upon by Pettinger in reaching his conclusion were, first, that property on a dead-end street such as Spruce Street generally carries a higher value than property having traffic on two sides and, second, that the size of the parkway between the north curb of Illinois Road and the southern boundary of lot 10 will cause an increased hazard to children who might reside on the premises. It is our opinion, however, that neither factor is competent to establish the depreciatory effect claimed, inasmuch as both factors are themselves bottomed upon the previous

speculation of the witness that the improvement will result in a traffic increase of a dangerous quality and quantity. Moreover, both Pettinger's testimony and the objector's arguments overlook the circumstance that Spruce Street is not in fact a dead-end street. While unimproved and seldom used from the east end because of its condition, the record establishes that Illinois Road is nonetheless an existing street, dedicated to the public, and, if the testimony of the objector is true, it is at times accessible to vehicular traffic for its full length. There is then no basis for the opinion as to value or benefits which is predicated on the ground that Spruce Street is a dead-end street.

As opposed to the objector's evidence, the proof of the village establishes that lot 10 will receive the benefits of increased fire and police protection, the first of which has been held to be a proper element of benefit in *Chicago Union Traction Co.* v. *City of Chicago*, 202 Ill. 576, and the witness Spellman testified that, with the improvements on Illinois Road completed, the value of lot 10 would be increased in the amount of the assessment against it. Based upon his experience in selling comparable parcels of real estate, the latter witness stated that so long as Illinois Road remains unimproved, the possibility of a special assessment for that purpose would cause prospective purchasers to demand an adjustment in a sale price. Although we are not concerned in this proceeding with any objections to the plan of distribution of the cost of the improvement, the evidence given by Stanley R. Housman, who spread the assessment, may also be considered insofar as it tends to establish that the amounts fixed in the assessment roll were based upon the benefits to be received by the various properties. (See: *City of Monticello* v. *LeCrone*, 414 Ill. 550.) In this regard his testimony that lot 10 did not have proper drainage, and that the proposed improvement would provide it with proper drainage stands uncontradicted in

the record. Indeed, the testimony of the objector himself admits to a drainage problem in the area to the immediate north of Illinois Road, and reveals the necessity of digging a ditch across Illinois Road in order to alleviate the situation. We are of the opinion, therefore, that the weight of the evidence establishes that lot 10 will receive benefits to the extent of the amount assessed against it.

Although the village has raised other issues on this appeal they are rendered moot by the conclusion reached. For the reasons stated, the judgment of the county court of Cook County is reversed insofar as it denied confirmation of the assessment on lot 10, but is affirmed in all other respects, and the cause remanded with directions to enter a judgment of confirmation with respect to such lot.

*Affirmed in part and reversed in part*
*and remanded, with directions.*