Village of Glencoe, a Municipal Corporation, Plaintiff-Appellant, v. Robert D. Jackson, Margaret Anne Jackson, First Federal Savings and Loan Association of Wilmette, as Mortgagee Under Mortgage Dated December 23, 1960, and Recorded January 4, 1961, as Document No. 18053336, Jocelyn Spitz Nebenzahl and Kenneth Nebenzahl, Commodity Conversion Corporation, a Corporation, Richard L. Nelson and Mary Jane Nelson, and Bell Savings and Loan Association, as Mortgagee Under Mortgage Dated March 14, 1951, and Recorded March 20, 1951, as Document No. 15034431, Unknown Owners and All Whom It May Concern, Defendants-Appellees.
In the Matter of a Special Assessment To Pay the Cost of Constructing a Sanitary Relief Sewer in Easements, Maple Hill Road and Sheridan Road in Said Village.

Gen. No. 50,788.

First District, Fourth Division.

October 30, 1968.

Rehearing denied February 4, 1969.

E. Douglas Schwantes and Kenneth O. Stonesifer, of Chicago (Ronald M. Glink, of counsel), for appellant.

Jacob Shamberg, Ralph G. Scheu, and Latchford & Latchford, of Chicago (George P. Latchford, Jr., of counsel), for appellees.

MR. PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

This is an appeal from an order entered by the Circuit Court on April 5, 1965, which order sustained the objections filed by certain individuals and the Lake Shore Country Club, and dismissed the special assessment proceeding brought by the Village of Glencoe (hereafter called the Village); and from an order entered by the Circuit Court on June 2, 1965, which denied the Village's motion to vacate the order of April 5.

It appears from the record that on March 14, 1963, the President and Board of Trustees of the Village, pursuant to the recommendations of the Board of Local Improvements, and after public notice and hearing, passed an ordinance providing for a local improvement in the Village for a sanitary relief sewer in easements, Maple Hill Road and Sheridan Road. The improvement is to be located in the northeast section of the Village. The details of the construction provide for the installation of a 15 and 12-inch sewer pipe that runs from Franklin Road down Sheridan Road and across to the 24-inch Metropolitan Sanitary District interceptor sewer just south of Maple Hill Road. The estimated cost of this improvement is $285,180.85.

For the purposes of this improvement the Glencoe ordinance created a sewer district, Special Assessment

District #281, encompassing the area bounded on the north by the Cook County-Lake County Line Road, the northern limits of the Village; on the east by Lake Michigan; on the west by the Northwestern Railroad tracks and embankment, with the exception of the Terrace Court area west of these tracks; and on the south by east-west lines which run into the Metropolitan Sanitary District interceptor sewer, just south of Maple Hill Road.

The alleged purpose of this improvement is to relieve the present 8-inch sanitary sewer system in that area. This system now comprises an 8-inch sewer in Sheridan Road which extends from Franklin to Maple Hill Drive, along Maple Hill Drive to an easement, and through the easements to a connection with a 24-inch interceptor of the Metropolitan Sanitary District. There are a number of branches to the present system; one extends north along Sheridan Road and as far north as the Lake Shore Country Club; another extends in a westerly direction along Franklin Street and across the railroad tracks, serving the Terrace Court area. There are also a number of lateral sewers connecting these principal collectors.

The 8-inch sanitary sewer was first installed in 1915, pursuant to a special assessment known as Special Assessment #217, which consists of approximately 200 acres and is about one-third smaller than Special Assessment District #281. The boundaries of District #217 were just north of Timber Lane on the north; on the west, the Northwestern Railroad right-of-way; on the south, the ravine south of Crescent Street; and on the east, Lake Michigan. This area comprised approximately 200 acres and was and is occupied by single family residences. Included in District #281, but excluded from the original District #217, is the Terrace Court area west of the Northwestern Railroad tracks, and the Lake Shore Country Club property located north of the old Special Assessment District #217. The southernmost portion

of the latter district south of the Metropolitan interceptor is not included in Special Assessment District #281.

The Village began considering the adequacy of the present 8-inch sewer in 1942. In that year the Village Board received a report from the engineering firm of Greeley & Hansen, indicating that the 8-inch sewer system was inadequate. In 1950 that firm was employed by the Village to bring up to date the estimates made in the report of 1942 and to advise the Village as to the potential benefits of the relief sewer being constructed by the Metropolitan Sanitary District to relieve the North Shore intercepting sewer system. This report in 1950 reiterated the need for certain improvements to the sanitary sewer system, including reinforcement of the sanitary sewer in Sheridan Road. The firm of Greeley & Hansen was again employed in 1958 to bring up to date the estimates made in 1942 and 1950, and they again recommended certain improvements as to the sanitary sewer system, including relief for Sheridan Road sewer.

Sometime in 1958 the Metropolitan Sanitary District objected to the Lake Shore Country Club's septic sanitary system which was dumping treated sewage into Lake Michigan. The minutes of the Village Board for September 3, 1958, introduced in evidence by the objectors at the first hearing, show that the controversy led the Board to accept the Lake Shore Country Club's proposal to construct at its own expense a lift station and an 8-inch sanitary sewer approximately 870 feet in length, to pump sewage from the Country Club to connect with the present 8-inch sanitary sewer in Sheridan Road. This sewer was subsequently built and connected to the 8-inch sewer system.

In January 1959, Greeley & Hansen were authorized to prepare plans and specifications for the construction of a relief sewer in Sheridan Road. These were prepared

and a permit issued by the Metropolitan Sanitary District in 1959 for the construction of this sewer. Public hearings were held in July of 1959 and because of a number of objections at that time the Village Board took the matter under advisement, and in January 1960 decided to defer the construction of the sewer until they could make some further inspection of downspouts. These inspections were made in 1959 and continued through the summers, being substantially complete by the summer of 1961. The special assessment proceedings were reinstated in 1962, and a public hearing was held in October 1962, following which there were a number of meetings between the Village and the opponents of the project.

After passing the ordinance, on July 2, 1963, the Village filed its petition in the County Court of Cook County under the Local Improvement Act pursuant to a petition for a special assessment to pay the cost of constructing a sanitary relief sewer in easements, Maple Hill Road and Sheridan Road in the northeast portion of the Village. On July 3, 1963, the court entered an order appointing two disinterested commissioners and the President of the Board of Local Improvements of the Village to investigate and perform the other duties to be performed as commissioners. They filed their assessment roll and report on August 13, 1964; a return day was set, and the required notices were published and mailed.

On September 21, 1964, an order of default and confirmation, except as to objections filed, was entered. On October 16, 1964, on plaintiff's motion, a rule was entered on the objectors to file specific legal objections and to set such objections for hearing. Specific objections were filed by the appellees, Lake Shore Country Club and certain other individuals. On April 5, 1965, the court heard the evidence presented by the objec-

tors. Various residents of the old District #217, all of whom are objectors in this action, the attorney and other representatives of the Lake Shore Country Club testified that they themselves had not experienced any backing up of their sewage from the present system, nor were they aware of any sewage problem in the area generally. Mr. Patek, a sanitary engineer, testified on behalf of the objectors that according to the current minimum design standards required by the State of Illinois, the present sewer system would be adequate to service the existing sanitary flows and storm infiltration in District #217, but that it would not be adequate to allow for a full development of the new special assessment area #281.

On the basis of this evidence the court sustained all of the defendants' objections and dismissed the special assessment proceedings. The court stated that the plaintiff had 30 days to come in on a motion to vacate, and that plaintiff could come in with any testimony it wanted at that time. On May 4, 1965, plaintiff filed a motion to vacate the order of April 5, sustaining objections and dismissing the petition, and to grant a new hearing, or, in the alternative, to overrule legal objections. In support of its motion the plaintiff offered into evidence the testimony of several residents of District #217 that after periods of heavy rainfall the sanitary sewers had backed up and an obnoxious odor discharged from the manhole covers in the streets. The then chief sanitarian of the Village and the present foreman of the Water Department testified that on occasion they had observed sewage flowing from the manhole covers onto the streets.

Matthew D. Riddle, a sanitary engineer, testified in behalf of the plaintiff that he was familiar with the project known as the sanitary relief sewer on Sheridan Road; that his firm prepared the plans which formed the basis of the ordinance enacted by the Village of Glen-

71

coe; that prior to the preparation of these plans in 1959 they reviewed the calculations of the capacity of the sewer and the required capacity of the sewer systems and it was determined that the size of the sewer indicated on those plans was necessary to provide adequate service to the area included within the proposed special assessment district. He testified that he was familiar with the Special Assessment District known as #281 and with the old District #217. In his opinion, the present sanitary sewage system is not adequate to serve the district known as #281, nor #217. He said he based his opinion on calculations he made consisting of two parts; first considering that part of the flow which can be classified as domestic sewage which originates in the household; and second, an allowance for storm infiltration. The calculations used to determine the adequacy of the sewer system were based on his own experience of the required capacity of sewers in the North Shore area. He testified that these requirements are greater than the minimum standards established by the State of Illinois in the review of plans for sewers that are built now; that he made no calculations using the State standards because they are not applicable to this case, and that those standards were established by the State merely as minimums in the review of plans submitted to them, and any design submitted to them that was less than these values would not be approved. Mr. Riddle further stated that in cases of old sewer systems where there is considerable infiltration and where the pipe had deteriorated it is necessary to use much higher figures than these minimums, and that the present system is not as tight as a new one might be.

Five of the defendants then testified that Mr. Riddle's testimony was in direct conflict with a statement he had made in June 1959, at a meeting called to explain the proposed assessment; that at that meeting Mr. Riddle

stated the present sanitary sewer was adequate for District #217 providing no one out of the district was allowed to make a connection to it. Mr. Riddle was recalled as a witness, but did not remember having made such a statement. On June 2, after hearing the evidence, the court denied the motion to vacate the order of April 5, 1965.

In this appeal the plaintiff urges that no evidence was introduced showing that the Glencoe Village Board abused its discretion in passing the Sanitary Sewer Ordinance and that the court clearly erred in dismissing the special assessment proceeding; that the order sustaining the objections and dismissing the special assessment proceeding was based on an erroneous view of the law and was contrary to the manifest weight of the evidence presented at both the first and second hearing; and that the court should have granted plaintiff's motion to vacate such order.

Chapter 24, Cities and Villages, section 11–109–1 of the 1963 Illinois Revised Statutes states: "The corporate authorities of each municipality *may* construct, repair, and regulate the use of culverts, drains, sewers, and cesspools." (Emphasis supplied.)

The case of Village of Millstadt v. Bereitschaft, 344 Ill 550, 176 NE 746, which is similar to the case before us, involved such an exercise of discretion. There, as here, legal objections were raised in a special assessment proceeding questioning the necessity of certain sanitary improvements. The objections were sustained and the proceeding dismissed. On appeal the court held at page 554.

"The question of the necessity of a local improvement, its character, where, when and how it shall be constructed and paid for are legislative in their nature and the legislature has committed them to the

corporate authorities of cities, villages and incorporated towns for determination. *It is only where the evidence is clear and satisfactory that the action of the municipal authorities was taken without reasonable grounds and is oppressive that the judiciary will interfere to declare an ordinance for a local improvement unreasonable.*" (Emphasis supplied.)

Clearly then, when municipal authorities are vested with the discretionary power to determine the necessity of local improvements and when they exercise their discretion reasonably and in good faith, their judgment will be permitted to stand and will not be judicially overturned. A court will not interfere with the proper exercise of the municipality's legislative discretion and substitute its own judgment as to the necessity of the proposed improvement for that of the corporate authorities. However, a court will not hesitate to invalidate an ordinance where it appears that it is unreasonable, arbitrary and oppressive. People ex rel. Lyddy v. City of Rock Island, 45 Ill App2d 76, 194 NE2d 647; Baltis v. Village of Westchester, 3 Ill2d 388, 121 NE2d 495. It was incumbent upon the defendants to clearly establish that the municipal authorities acted so unreasonably as to overcome the presumption that the ordinance is valid. Village of Millstadt v. Bereitschaft, supra; City of Carbondale v. Reith, 316 Ill 538, 147 NE 422.

In the instant case, the trial judge, after hearing all of the evidence presented, determined—and we believe correctly—that the present sewage system for the proposed district was quite adequate; that the people living there were satisfied with conditions as they presently exist; and that the proposed improvement was unnecessary. The trial judge who sees the witnesses and hears the evidence is in a much superior position to find

the truth than is a reviewing court which has before it only the printed page. The weight to be given the testimony and the credibility of the witnesses are matters which are within the trial judge's province. Consequently, where a trial judge has heard witnesses give oral testimony his findings will not be disturbed unless they are plainly erroneous and contrary to the manifest weight of the evidence. People ex rel. Penrod v. Chicago & N. W. Ry. Co., 17 Ill2d 307, 161 NE2d 126; Boyd v. Boyd, 58 Ill App2d 1, 207 NE2d 350; Dailey v. Meredith, 56 Ill App2d 230, 205 NE2d 640; Marshall Field & Co. v. J. B. Noelle Co., 81 Ill App2d 409, 226 NE2d 454; Jorn v. Tallett, 341 Ill App 240, 93 NE2d 82. After reviewing the entire record this court finds not only that the finding of the trial court is not manifestly contrary to the weight of the evidence, but rather is overwhelmingly supported by a preponderance of that evidence.

Defendants presented evidence that the present sewage system complied with the current minimum design standards required by the State of Illinois, and that approximately 240 of the residents in the area, apparently satisfied with the adequacy of the current system, had objected to the special assessment. In rebuttal, and in support of their motion to vacate the order of April 5, 1965, the only evidence of the actual inadequacy of the present system plaintiff was able to produce was the testimony of two residents of the proposed district and two water department officials that some occasional backing up of sewage had occurred. This testimony, however, must be considered in light of the fact that the condition was caused by heavy rainfall and that this one particular area is considerably lower than the main sewer into which it empties. Qualified engineers also testified on behalf of the defendants that the system was adequate. Under those circumstances it cannot be said

that the finding of the trial court was against the manifest weight of the evidence. Clearly then, the municipal authorities of the Village abused their legislative discretion in passing and attempting to enforce an ordinance creating an unnecessary improvement through this proceeding.

■ Plaintiff contends that chapter 24, sections 9–2–57 and 9–2–58 of Illinois Revised Statutes (1963) are controlling here and that the question of benefits was not properly an issue at a hearing on legal objections, but rather is to be resolved at a separate hearing. While some of the evidence offered at the trial may seem somewhat similar to evidence relating to the question of benefits, it clearly was not. The question of whether the particular property of an objector will or will not be peculiarly benefited by the improvement is quite different and distinct from the issue of whether the improvement itself is necessary. The objection that an improvement is unnecessary is one which may properly be raised at trial as it was here under section 9–2–57. City of Chicago v. Van Schaack Bros. Chemical Works, 330 Ill 264, 161 NE 486.

At the present time there is simply no need for installing a new sewage system; the present one is quite adequate. In the past, legal objections have been raised questioning the necessity of local improvements, and the ordinances creating them have been invalidated on that basis. See City of Carbondale v. Reith, supra. This court will not hesitate to hold that an ordinance is invalid where it clearly appears from the evidence that the improvement for which it provides is unnecessary. McFarlane v. City of Chicago, 185 Ill 242, 57 NE 12; City of Chicago v. Brown, 205 Ill 568, 65 NE 65; South Park Com'rs v. Pearce, 248 Ill 578, 94 NE 33. It is true that the necessity of local improvements is commonly com-

mitted to the judgment of the municipal authorities, but only when they have exercised their judgment reasonably. Here they have not.

The judgment of the Circuit Court is affirmed.

Affirmed.

DRUCKER and ENGLISH, JJ., concur.