*In re* PETITION TO LEVY A SPECIAL ASSESSMENT FOR PAVING IMPROVEMENT —(THE CITY OF EAST PEORIA, Petitioner-Appellee, *v.* GEOFFREY O. MAVIS *et al.,* Objectors-Appellants.)

(Nos. 73-63, 64, 65, 66 cons.;

Third District—November 30, 1973.

James E. Sutherland, of Peoria, for appellants.

Carl F. Reardon, of East Peoria, for appellee.

Mr. JUSTICE DIXON delivered the opinion of the court:

This is an appeal from an order of the Circuit Court of Tazewell County, Illinois, entered November 16, 1972, revising the assessment roll for a local improvement known as Paving Improvement 71—A, Spencer and Cass Streets, in the City of East Peoria, Illinois.

The City of East Peoria had proposed the improvement of Spencer and Cass Streets, which were two intersecting streets within the City, by reconstructing them as an industrial type of street capable of carrying heavy truck traffic, and by installing concrete curbs and gutters, previously lacking, and a storm sewer system. The assessment roll allocated approximately 30% of the cost of this project to the municipality and approximately 70% to adjoining private property which was to be benefited.

Objections were filed by a trucking company and major stockholders of other trucking companies, all engaged in the business of hauling heavy equipment and being the owners of land near the intersection which was used for office buildings and the storage of empty trailers. Also situated near the intersection was property of the Caterpillar Tractor Company, consisting of two large employee parking lots and a baseball diamond, but Caterpillar did not file an objection to the assessment of its property. The issues raised by the truckers' objections were whether their property was assessed more than it would be benefited, whether the cost of the improvement was equitable apportioned among the tracts assessed, and whether the cost was equitably divided between the public and the property to be benefited.

At the hearing on the objections the trial court reduced the objectors' assessments by amounts ranging from 20% to 25% of the original figures, but not so far as was sought. The objectors have appealed.

To establish that the property of the objectors was not assessed more than it would be benefited, the City called a witness who was a realtor, land developer, and real estate appraiser with particular experience in the valuation of commercial and industrial property. He testified that he had visited the site of the proposed improvement four times, had looked at the lots of the objectors, had considered their value before and after the street improvement, had made comparisons with property values in other developments, and had arrived at the opinion that the cost of the project charged to the adjoining property was "pretty well covered" by the increase in values which would result.

The City's appraiser was questioned as to his knowledge of recent sales of comparable property in the vicinity. It was brought out that he had recently sold a nearby tract for much less per acre than certain property assessed. However, the nearby tract, he explained, was triangular. The rarity of triangular buildings, the increased cost of erecting structures not rectangular, the diminished size of a rectangle that can fit within a triangle, and the manifest difficulty of making full use of triangular areas of buildings or outside of them are reasons for expecting a triangular piece of property in a city to sell for less than a rectangular lot having the same area. We are not persuaded that evidence of the value per acre of the triangular tract has any bearing on the weight to be given to the City's figures for the objectors' property.

The objectors introduced their real estate expert, of comparable background and experience, who gave smaller figures for the value of their lots before and after the street improvement. In cross examination he admitted that a lot which he had appraised at $10,000 before and $12,500 after the improvement had been purchased for $16,000 within the preceding three years. Also, in the course of explaining his comparatively small figures for benefit to the property of the objectors, he said: "It was my opinion that most did not want it to reflect any more increase than I have indicated."

■■ One of the objectors testified that the improvement would not benefit his property because the curbs would hinder access and damage tires. In an analogous case the Illinois Supreme Court stated: "The basis of the assessment is the enhanced market value of the property. The benefit or detriment to the occupant of the premises in his business cannot determine that question, though it may be proper for consideration in forming a judgment." (*City of Chicago v. Marsh*, 250 Ill. 512, 514.)

Recently it was reiterated that "benefits are not limited to the present use of property capable of a different use." *City of Highland Park v. Edward Hines Lumber Co.*, 130 Ill.App.2d 664, 665.

■■ It is established that a reviewing court will not disturb a finding on the question of benefits unless it is clearly and palpably against the manifest weight of the evidence. (*Village of Glen Ellyn v. Lami*, 10 Ill.App.3d 243, 246.) The assessments fixed by the trial court were within the range of the testimony as to private benefit (*City of East St. Louis v. American Asphalt Roof Corp.*, 331 Ill. 58, 63), and did not need to be the figures given by either side. (*Village of Oak Park v. Lane*, 275 Ill. 420, 422.) We believe the objectors have not sustained their burden of proof on the issue of benefits to their property.

■■ In order to show that the cost of the proposed improvement was not equitably apportioned among the tracts assessed, the objectors established that the depth of the Caterpillar parking lots was much greater than the depth of their lots, and argued that the assessments should have been made proportional to area. Area is not controlling, though it may be considered, with frontage, in determining benefits. (*City of Batavia v. Wiley*, 342 Ill. 384, 391.) Furthermore, an assessment on the basis of frontage is not invalid if the special benefits are in proportion to frontage. (*Walker v. City of Aurora*, 140 Ill. 402, 411.) The commissioner testified that his assessment was based on foot frontage but that he had got plats or maps to determine the size of the various pieces of property. It has been explained: "Both the frontage of the various tracts and their areas are proper to be considered in determining the relative benefits to be derived from the improvement. Upon the filing of the assessment roll it is presumed that the superintendent of assessments has performed his duty, and the assessment will not be modified, altered, annulled or re-cast merely because there is a difference of opinion as to whether the officer making it exercised sound judgment in spreading it, unless the assessment is clearly inequitable or unjust or his action was so improper as to amount to fraud." (*City of Chicago v. McKinlock*, 256 Ill. 38, 40.) It does not appear that the objectors obtained an appraisal of the Caterpillar property to fix its fair market value before and after the improvement. Therefore we are unable to determine whether a larger amount should have been charged to the Caterpillar property, and cannot find that the assessment was clearly inequitable or unjust or was tainted with fraud.

■■ In support of the objectors' claim that the cost of the proposed improvement was not equitably divided between the public and the property to be benefited, one of the objectors pointed out that the public made use of the streets to reach a nearby park and to get to the river

to go fishing. He admitted, however, that the people driving to the park or the river would be in automobiles, usually, and not twenty-ton trucks. Furthermore, the evidence showed that the streets were industrial arteries for heavy truck traffic, and that their improvement as industrial streets was going to be twice as expensive as if they had been residential streets. The commissioner testified that he had taken into consideration the facts that very few citizens of East Peoria would use the streets, that mostly passenger cars would be going to the park, and that the increased cost of this project was due to its involving an industrial type of street. It does not appear to us that the commissioner's allocation of cost to the City was clearly inequitable, or that the determinations of the trial court were clearly and palpably against the manifest weight of the evidence.

For the reasons stated, the order of the circuit court of Tazewell County is affirmed.

Order affirmed.

STOUDER, P. J., and SCOTT, J., concur.