*In re* VILLAGE OF PALOS PARK.—(THE VILLAGE OF PALOS PARK, Petitioner-Appellee, *v.* JACK PAYAN *et al.*, Respondents-Appellants.)

First District (2nd Division)   No. 79-1233

Opinion filed March 18, 1980.

Edward G. Vogt, P. C., of Kankakee, for appellants.

McCarthy, Scheurich, Duffy, Neidhart & Snakard, of Chicago (Frank K. Neidhart, Thomas J. Montgomery, and Thomas S. Moore, of counsel), for appellee.

Mr. JUSTICE HARTMAN delivered the opinion of the court:

A special assessment petition filed by the village of Palos Park on April 4, 1978, generated objections from six property owners who were included in a proposed sanitary sewer district in the village. Legal objections filed by the objectors were overruled by the circuit court. They have not been included in the record. Amended benefit objections were filed and tried before a jury pursuant to statute (Ill. Rev. Stat. 1977, ch. 24, par. 9—2—58) on May 7 and 8, 1979, resulting in a verdict in favor of the village of Palos Park, upon which judgment was entered on May 8, 1979. The objectors' post-trial motion was overruled on May 17, 1979, from which order this appeal proceeds. That motion, in two parts, averred, first, that the improvement to objectors' properties is "* * * minimal, disproportionate * * *," and that they were added into the assessment "* * * for the sole reason of minimizing the cost of improvement to the other persons seeking said assessment," for which they sought exclusion from the assessment, and, second, "* * * that the jury was wholly unwarranted in finding that the property of the objectors was assessed in the proportionate share of the cost of the improvement."

The issues presented for review are whether or not the trial court should have sustained the objections and permitted the objectors' disengagement from the special assessment and whether or not the trial court erred in failing to reduce the special assessment attributable to the objectors. We affirm for the reasons which follow.

The assessment roll and report (hereinafter report) filed on August 25, 1978, reveals that the area contained within the assessment district, designated as the Northeast Area Sanitary Sewer, is bounded by 80th Avenue, Brand Avenue, Virgil Avenue and the north side of 120th Street. The report refers to Ordinance No. 1978-1 adopted by the village, and recommendations and estimate of the board of local improvements, the amount assessed against each lot, the names of taxpayers for each such lot

and their residences, the amount found to be public benefit and assessed to the municipality and the amount of each assessment. The estimated cost of the improvement was $57,900 which, when spread equally among the 22 property owners whose property would benefit by the improvement, amounted to $2,631.82 to be paid in 10 installments.

Each of the six objectors owned property on 121st Street. The ordinance had attached to it as Exhibit A a plan purporting to show the assessment district and location map. The exhibit reveals an existing sanitary sewer lying within 121st Street, described by the village engineer as a 15″ concrete sanitary sewer, previously constructed for the benefit of Palos Hospital. Connecting wyes for future use were built into this existing sewer as a cost to the village and apparently remained as its obligation to Palos Hospital in an amount of $2,700, according to the estimate. At page 2 of the plan the following note appears:

"A 15″ SANITARY SEWER WAS INSTALLED IN 121ST STREET BETWEEN 80TH AVENUE AND VIRGIL AVENUE UNDER MSDGC PERMIT NO. 77-109 WHICH INCLUDED 9 - 15″x6″ WYE BRANCHES. THIS CONTRACT INCLUDES THE LOCATION OF THESE WYE BRANCHES AND THE INSTALLATION OF A 6″ VCT HOUSE SERVICE FROM EACH WYE BRANCH TO THE PROPERTY LINE AS DIRECTED BY THE ENGINEER."

No direct reference is made to the improvement intended for 121st Street property in the ordinance; however, the following language appears:

"Section 1: A local improvement shall be constructed in the Village of Palos Park consisting of:

❋ ❋ ❋

Junctions shall be provided for each recorded lot, whether vacant or occupied. House service risers and laterals shall be installed where shown and noted on the plan."

The objectors called the village engineer, Raymond P. Bliss, under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 60), and also called as their own witnesses Sharon Lentfer, a real estate broker, and Jack Payan, one of the objectors. As their witnesses, the village called William McCann, a real estate appraiser, and a resident and former village functionary, Warren Jacobek. Such aspects of the testimony of these witnesses as are pertinent to the issues on appeal will be discussed in the body of this opinion.

The first point raised by the objectors is that the village is seeking to assess private property for the construction and installation of a sanitary sewer which already exists, abuts the objectors' properties, is connected to the Cook County sanitary sewer system and needs nothing further in order to utilize it for the purpose of carrying sewage. Observing that the

cost of this existing sewer is not included in the special assessment except the item of obligation to Palos Hospital, the objectors contend that the direct cost of constructing and installing sewers abutting the properties of the other 16 participants was spread equally among these participants as well as the objectors, the effect being to require the objectors to pay in part for new sewer construction and installation to be enjoyed by others. Whether the plan of distribution of cost was equitable or the improvement was necessary are legal questions to be decided by the trial judge, not the jury. (*City of Monticello v. LeCrone* (1953), 414 Ill. 550, 558, 111 N.E.2d 338; *Village of Glencoe v. Jackson* (1968), 102 Ill. App. 2d 65, 76, 243 N.E.2d 865.) The village asserts that these questions were not so submitted in this case, are not of record, were never ruled upon and must be deemed waived, citing *Snow v. Dixon* (1977), 66 Ill. 2d 443, 362 N.E.2d 1052, and *Pennington v. Alexander* (1968), 103 Ill. App. 2d 145, 242 N.E.2d 788. Objectors rely upon section 9—2—57 of the Illinois Municipal Code (Ill. Rev. Stat. 1977, ch. 24, par. 9—2—57) as authorizing these issues to be considered on appeal because "* * * further controversy as to the remaining question upon the record," the benefit objection, had been pursued, leaving the legal objections available for review. Section 9—2—57 does not relieve an objector from preserving for review those legal objections actually presented to and passed upon by the trial judge, however. Mere reference to them in a post-trial motion without their inclusion in the record on appeal is insufficient.

■■ Even had the legal objections been properly preserved for review, the difficulty with objectors' argument is the assumption that they already had "access" to the 121st Street sewer and nothing further was needed to implement their use thereof. "Access" in this context denotes more than mere proximity; it implies the unobstructed right to use an adjoining facility (*Cobb v. Commissioners of Lincoln Park* (1903), 202 Ill. 427, 67 N.E. 5; *Stoner Manufacturing Corp. v. YMCA* (1958), 13 Ill. 2d 162, 148 N.E.2d 441). An easement of access to a sewer includes the right of connection. (Black's Law Dictionary 28 (4th ed. 1951).) In the present case, as the ordinance, plans, estimate of costs and testimony show, considerable implemental work would have to be performed in order to effect the necessary connections between the existing sewer and the objectors' properties, thereby supporting the plan of cost distribution. For example, 6″ vitrified tile lateral sewers are to be installed in the street leading from wyes in the existing sewer in 121st Street to the private property line of each objector, from, 12′ to 14′ distant, where they then become accessible for purposes of tapping into the system and its utilization. According to the testimony of the village engineer, Bliss, to accomplish tap-in for the properties, some lateral sewers on 121st Street would have to go under the street and others would not. Trenching,

excavating, trench-backing with stone fill in paved areas, replacement of sodding, replacement of bituminous concrete for street and driveway crossings, as well as engineering and inspections, would all be required in order to effectuate use of the existing 15″ sewer line. Such circumstances were not present in the inapposite cases cited by objectors, including *Sheedy v. City of Chicago* (1906), 221 Ill. 111, 77 N.E. 539; *McFarlane v. City of Chicago* (1900), 185 Ill. 242, 57 N.E. 12; *City of Highland Park v. Edward Hines Lumber Co.* (1970), 130 Ill. App. 2d 664, 265 N.E.2d 408; or *Village of Glencoe v. Jackson* (1968), 102 Ill. App. 2d 65, 243 N.E.2d 865. In the absence of legal objections demonstrating substantial inequality in the plan of distribution of the assessment over the various lots, as in this case, courts will not interfere with the plan. (*City of Batavia v. Wiley* (1930), 342 Ill. 384, 391, 174 N.E. 553.) The inclusion of objectors' property in the sanitary sewer district in the case at bar has not been shown to be other than a proper, equitable and reasonable exercise of the village board's discretion. *In re Special Assessment* (1977), 46 Ill. App. 3d 772, 361 N.E.2d 290.

With respect to their benefit objection, it is maintained that if the minimal expenditure required in constructing the lateral sewers was the only basis of the cost of improvement attributable to them, no objections would have been made,[1] but the village has enmeshed these items of cost with construction of a new main sewer intended to serve other properties with benefits wholly foreign to objectors. They consider this situation sufficient upon which to require that the cause be remanded to the trial court for reallocation of costs with respect to them, which they estimate to be 10 percent of the total cost of construction in contrast with the 27 percent they are being assessed. They point to the report and map of the proposed improvement in which larger sized lots or groupings of lots were assessed no more than smaller groupings; persons were omitted from the assessment roll although their properties were benefited; and refer to an ordinance adopted while the cause was pending establishing a $3,000 sewer tap-in fee in lieu of the original $200 charge. Acknowledging that a special assessment will not be modified by the courts unless it is clearly inequitable, unjust or so improper as to amount to a fraud, citing *City of Highland Park v. Edward Hines Lumber Co.* (1970), 130 Ill. App. 2d 664, 665-66, objectors claim such circumstances exist in this case.

█▄█ The basis of an assessment is the proportionate enhanced market value of the property (*People ex rel. Drobnick v. City of Waukegan* (1953), 1 Ill. 2d 456, 462, 116 N.E.2d 365; *People ex rel. Smith v. Brewer Estate* (1935), 362 Ill. 88, 91, 199 N.E. 109), and a reviewing court will not

---

[1] The objectors submitted three sets of figures which they maintain reflect alternate methods of assessing against them the actual cost involved in the project attributable to each of their properties, namely, $946.56, $1,133, and $1,679.81.

disturb a jury finding on the question of benefit unless it is clearly and palpably against the manifest weight of such evidence. (*Village of Glen Ellyn v. Lami* (1973), 10 Ill. App. 3d 243, 293 N.E.2d 478; see also *City of Chicago v. Marsh* (1911), 250 Ill. 512, 514, 95 N.E. 473.) The assessment roll submitted in the instant case was *prima facie* evidence of the correctness of the amount assessed. (*Village of Northbrook v. Steerup* (1959), 16 Ill. 2d 530, 158 N.E.2d 630.) This presumption is rebuttable by evidence showing that the fair cash market value of the property before and after the improvement would not be enhanced at all or that the property would not benefit to the extent of the amount assessed against it. The fact that some lots possessed a greater area or frontage than others is not controlling, although such fact can be considered in determining benefits. (*City of East Peoria v. Mavis* (1973), 15 Ill. App. 3d 357, 360, 304 N.E.2d 496.) The evidence adduced from the witnesses in the present case reveals testimony for the objectors of a real estate broker, Lentfer, who stated that in her opinion the six homes would not be worth one penny more whether there were served by a septic system or by a sewer system.[2] Contrasted with this testimony, McCann, a professional real estate appraiser, testified for the village that each property in the assessment area, including objectors', would benefit from the utilization of a sewer system in an amount in excess of $2,600. The conflicting evidence concerning fair cash market value and benefit was a question to be resolved by a jury; their verdict that the objectors' properties would indeed proportionately benefit was clearly supported by the record and cannot be disturbed by this court on review. *City of Monticello v. LeCrone* (1953), 414 Ill. 550, 556-57; *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.

■■ Assessments are not limited to the cost of materials used for the construction of an improvement as it affects each parcel individually. The fact that certain aspects of the improvement contemplated within the assessment district by themselves do not directly benefit objectors' properties is an insufficient reason for reducing the assessments of these parcels if the effect of the overall improvements adds to the values of these parcels in an amount equal to the assessment and the assessment is not more than the proportionate shares thereof. (Ill. Rev. Stat. 1977, ch. 24, pars. 9—2—45, 9—2—58; *City of Chicago v. Farwell* (1918), 284 Ill. 491, 502-03, 120 N.E. 520.) The proportion is determined not by comparison with the cost of certain parts as though they were separate improvements, but by comparison with the cost of the whole improvement. 284 Ill. 491, 503.

With respect to the argument relating to the increased fee assessed by the village for those property owners seeking to tap into the existing

---

[2] On oral argument, counsel for objectors conceded the lack of merit in this testimony.

sewer system, the presumption of its validity was neither challenged nor ruled upon by the trial court and is not properly before us on appeal. The change in fee might be inferentially construed as manifesting a legislative intent to rectify those inequitable situations in which property owners who decline to participate in special assessment districts later seek the benefits from utilizing the existing system at a relatively negligible cost to them by virtue of the substantial payments earlier required of the actual participants.

For the foregoing reasons the order from which this appeal is taken must be affirmed.

Affirmed.

PERLIN, P. J., and DOWNING, J., concur.